## SPENCER v. WORTHINGTON.

(Supreme Court, Appellate Division, Second Department. November 21, 1899.)

1. MASTER AND SERVANT—DUTY OF MASTER TO FURNISH SERVANT WITH SAFE APPLIANCES.

A master is not bound to furnish the best-known appliances, but such only as are reasonably safe and suitable for the work.

2. SAME—ASSUMPTION OF RISK.

A servant, while oiling some machinery with a short-spout can, was injured. He was aware of the danger in using such a can, and had complained to defendant's foreman of being compelled to use it, and the foreman promised to replace it with one having a long spout. Held, that he assumed the risk, and hence could not recover.

Appeal from trial term, Kings county.

Action by Joseph J. Spencer against Henry R. Worthington for personal injuries. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Herbert C. Smyth (Edwin A. Jones, on the brief), for appellant.
Henry A. Powell, for respondent.

CULLEN, J. This action is servant against master to recover damages for personal injuries. The defendant was engaged in the manufacture of pumps and hydraulic machinery. The plaintiff had been in the employ of the defendant in that business for some nine years previous to the accident. His work was in the operation of tools and machines used to cut metal. At the time of the accident it became necessary for him to oil a tool held by a ram, which was moved upward and downward with great frequency. The spout of the oil can used by the plaintiff for this purpose was caught by the ram, and bent over upon his finger, injuring it so as to require its amputation. The only charge of negligence on the defendant's part upon which the cause was submitted to the jury was that the oil can should have had a long spout instead of a short one. The plaintiff testified that until about three weeks before the accident he had always used a can with a long spout, so as to avoid the danger of his hand being caught in any of the machines; that at this time he left the can with the long spout at a machine which he had been operating, from which it was carried away by some person, and he was unable to recover it. He further testified that he thereupon applied to the foreman for another can; that there was no can with a long spout in the storeroom, and hence he was compelled to take a can with a short spout; that he protested several times against the use of such a can, and that the foreman promised to get another can, with a long spout. There was no dispute as to how the accident occurred. The foreman to whom the plaintiff claims to have applied for a can with a long spout had left the defendant's employ, and the only witness on its behalf was the superintendent, who testified to finding a can with a long spout on the machine immediately after the occurrence of the accident. This witness further testified that all the workmen in the shop or machine works, with the exception of the plaintiff, used the short-spout can. The jury having rendered a verdict for the plaintiff, we must assume that he complained to the foreman of being compelled to use the short-spout can, and that the foreman promised to replace it with one having a long spout. There is no question in the case as to the extent of the plaintiff's knowledge of the dangers arising from the use of the short-spout can. He testified, "Whatever danger there was in using a short-spouted can I knew myself." In fact, the plaintiff's testimony was the only evidence on which the jury could find that the use of the short-spout can was dangerous. We are not entirely clear that this testimony was sufficient for the purpose. The evidence of the foreman that every workman in the shop other than the plaintiff used the short-spout can was not con-

tradicted, nor was there any evidence that the long-spout can was adopted and used in similar establishments. The master was not bound to furnish the best-known appliances, but such only as were reasonably safe and suitable for the work. Of this rule the learned trial court, in its charge, gave the defendant the full benefit; but, if the can furnished to the plaintiff was the appliance ordinarily used for the purpose, we very much doubt whether the question should have been left to the jury at all. However this may be, the question still remains whether the plaintiff can be heard to complain of the insufficient or defective character of the appliance which he used. It is true that in many cases the fact that an employé knows of the defective character of the appliances furnished by the master will not preclude the former from recovering for injuries occasioned by such defects. In the use of complicated machinery it may well be that a workman is entirely aware that there is something defective or out of repair, and yet is ignorant of the danger, or its extent, to which he is subjected by such defect or want of repair. He has the right to rely on the assumption that the master will fulfill his legal obligations to him; that is, use reasonable care to guard him from the dangers of unsafe or defective appliances. Especially is this the case where the master assures him of his safety. Concededly, in the case before us the character of the appliance and the danger from its use were obvious to the plaintiff. It therefore does not fall within that class where the servant is entitled to rely on the superior knowledge of his master, nor does the learned counsel rest his claim on that ground. He asserts the doctrine that, though the danger was obvious, and though the risk was entirely appreciated by the plaintiff, still the latter was justified in continuing his work, and could hold the master liable for any injury resulting from such dangerous condition, provided a jury should find that the danger was not so great that it was foolhardy to encounter it. Whether this doctrine, as broadly as contended for, can be upheld as the law in this state in any case except one of emergency or of necessity to save life or property, is questionable. It is not applicable to this occurrence. In Laning v. Railroad Co., 49 N. Y. 521, the plaintiff knew that the fellow servant for whose negligence the defendant was held liable was intoxicated, but he did not know the manner in which the scaffold was built, or that there was any defect in it. In Hawley v. Railway Co., 82 N. Y. 370, the plaintiff, an engineer, had a general knowledge that the railroad was out of repair, but he also knew that passengers and freight were continually being transported over it, and he had no knowledge of the particular defect which caused his injury. In neither case can the danger which occasioned his injury be said to have been obvious. In Marsh v. Chickering, 101 N. Y. 396, 5 N. E. 56, the plaintiff was injured by the slipping of a ladder which he claimed was defective because it was not provided with spikes. The master had promised that spikes should be furnished. It was held that the plaintiff assumed the risk arising from the use of the ladder. In Sweeney v. Envelope Co., 101 N. Y. 520, 5 N. E. 358, the same rule was held where the servant was injured in using

a press, and the master had promised to provide a clutch. In Hannigan v. Smith, 28 App. Div. 176, 50 N. Y. Supp. 845, the plaintiff, a hod carrier, was injured by a brick falling from above. He had complained that the place whence the brick fell was insecure, and the master had promised to place a protection. It was held that, as the danger was obvious, and the plaintiff knew of it, he assumed the risk, despite the promise of the master. The learned counsel for the respondent, from an elaborate analysis of the decided cases in this state, deduces the rule that, where only simple appliances are used, the servant assumes the risk of their character or condition so far as they are known to him, notwithstanding any promise of the master; but, where machinery is used, the promise of the master to repair defects relieves the servant from assuming the risk. We do not see on what principle such a rule can well stand. There is a great difference between the use of a steam boiler and that of a stepladder. A servant exercising due care would probably always know when a stepladder was likely to break down, while he might not know when a boiler was likely to blow up. Therefore there is a marked distinction between a boiler and a stepladder, so far as knowledge of danger and consequent assumption of risk should be imputed to the servant. But when, because the servant is an expert, or for other reasons, his knowledge of the danger arising from the use of the boiler is just as great as an ordinary servant would possess in the use of a stepladder, we do not see on what ground any distinction can be drawn between the two cases. This case, however, does not present the use of complicated machinery. There was no defect in the machine on which the plaintiff was at work. The danger to be avoided was that his hands or his can might be caught by the ram. The appliance of which he complains is the can itself, and the danger from using a short-spout can seems to be entirely similar to that in the use of the spikeless ladder in the Marsh Case.

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur.