HERBERT J. RICE, Appellant, *v.* EUREKA PAPER COMPANY, Respondent.

1. MASTER AND SERVANT — RISK OF EMPLOYMENT — WHEN PROMISE TO REPAIR DEFECTS IN MACHINE SHIFTS RISK. A promise made by the master at the close of the week to repair a machine during the fore part of the next week is a promise to repair, not at once, but within a reasonable time, and a servant who had accepted employment upon the machine with knowledge of its defects, but thereafter protested against them and threatened to quit work unless they were remedied, and who was induced by such promise to continue in his employment, is justified in remaining at his work during such time, and where he is injured on the Wednesday of the following week, the risk of employment theretofore voluntarily accepted by him became that of the master and the latter is liable.

*Rice* v. *Eureka Paper Co.*, 70 App. Div. 336, reversed.

(Argued March 5, 1903; decided April 9, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 20, 1902, which reversed a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank C. Sargent* for appellant. Defendant was guilty of negligence. (*Radman* v. *Haberstro*, 17 N. Y. S. R. 497; Thomas on Negligence, 746; *Benzing* v. *Steinway & Sons*, 101 N. Y. 541; *Laning* v. *N. Y. C. & H. R. R. R. Co.*, 49 N. Y. 521; *Corcoran* v. *Holbrook*, 59 N. Y. 517; *Cone* v. *D., L. & W. R. R. Co.*, 81 N. Y. 206.) The plaintiff did not assume the risk, nor was he guilty of contributory negligence by continuing at work under the promise to repair. (Cooley on Torts [2d ed.], 559, 560; S. & R. on Neg. [5th ed.] 372; Bailey's Master's Liability to Servants, 207; Dresser's Employer's Liability to Servants, 583, § 115; 2 Thompson on Neg. 1009; Whittaker's Smith on Neg. 172; Burrows on Neg. 120; Wood on Master & Servant, 753,

25

§ 380; *Hough* v. *Railway Co.*, 101 U. S. 225; *Swift & Co.* v. *O'Neil*, 187 Ill. 337; *Ferriss* v. *B. M. Works*, 90 Wis. 541; *Stoutenburgh* v. *D. G. H. Co.*, 82 Iowa, 239; *Roux* v. *B. & D. L. Co.*, 85 Mich. 519; *Snowberg* v. *N. S. Co.*, 43 Minn. 532; *Manufacturing Company* v. *Morrisey*, 40 Ohio, 148; *Conroy* v. *V. I. Works*, 62 Mo. 35; *Patterson* v. *P. & C. R. R. Co.*, 76 Penn. St. 389; *G., C. & S. F. R. Co.* v. *Donnelly*, 70 Texas, 371.)

*James Devine* for respondent. The risk incident to the service and operating the machine being obvious and understood by the plaintiff, he must be held to have assumed it, and defendant is, as a matter of law, exempt from liability. (*Hickey* v. *Taaffe*, 105 N. Y. 26; *Buckley* v. *G. P. Co.*, 113 N. Y. 540; *Crown* v. *Orr*, 140 N. Y. 450; *Knisley* v. *Pratt*, 148 N. Y. 373, 377; *Monzi* v. *Friedline*, 33 App. Div. 217; *Farrell* v. *Tatham*, 36 App. Div. 319; *Cmielowski* v. *M. S. R. Co.*, 11 App. Div. 111.) The plaintiff, in accepting service upon the machine, took the risk of the apparent perils incident to its use in its then condition, and defendant was not called upon to make any alterations to secure greater safety. (*Hickey* v. *Taaffe*, 105 N. Y. 26; *Sweeney* v. *B. & J. E. Co.*, 101 N. Y. 520; *Gibson* v. *E. R. R. Co.*, 63 N. Y. 452; *De Forrest* v. *Jewett*, 88 N. Y. 264; *Shaw* v. *Sheldon*, 103 N. Y. 667; *Bajus* v. *S., B. & N. Y. R. R. Co.*, 103 N. Y. 318.) Even assuming that a promise was made by the defendant to place a shifter upon the machine, the risk assumed by the plaintiff was not suspended, and plaintiff was guilty of contributory negligence. (*Sweeney* v. *B. & J. E. Co.*, 101 N. Y. 523; *Hannigan* v. *Smith*, 28 App. Div. 176; *McCarthy* v. *Washburn*, 42 App. Div. 252; *Spencer* v. *Worthington*, 44 App. Div. 496; *Marsh* v. *Chickering*, 101 N. Y. 396.) Even though a promise be made which does suspend the risk, it is suspended only while the promise is running, and the promise must be the inducement that led the servant to continue work. (*B., etc., Ry. Co.* v. *Liehe*, 17 Col. 286; *S. O. Co.* v. *Helmick*, 148 Ind. 460; *McF. C. Co.* v.

*Potter,* 52 N. E. Rep. 209; *Wilson* v. *Winona,* 37 Minn. 326; 20 Am. & Eng. Ency. of Law, 128; *Lewis* v. *N. Y., etc., R. R. Co.,* 153 Mass. 73.) The absence of a shifter upon this rag cutter was not the proximate cause of plaintiff's injury, and whether its presence would have prevented the injury is pure speculation and guesswork. (*Hudson* v. *R., W. & O. R. R. Co.,* 145 N. Y. 408; *Bond* v. *Smith,* 113 N. Y. 378; *Pauley* v. *S. G. & L. Co.,* 131 N. Y. 90; *Linkhauf* v. *Lombard,* 137 N. Y. 417; *Hemmens* v. *Nelson,* 138 N. Y. 517; *Laidlaw* v. *Sage,* 158 N. Y. 73; *Ryder* v. *S. R. T. R. Co.,* 171 N. Y. 139.) The injury was the result of an unforeseen accident, not one that could have been reasonably anticipated by the defendant, and plaintiff cannot recover. (*Buckley* v. *G. P. & R. M. Co.,* 113 N. Y. 540; *Ayres* v. *R. R. R. Co.,* 156 N. Y. 104; *Cleveland* v. *N. J. S. Co.,* 125 N. Y. 306.)

WERNER, J. This action is brought to recover damages for injuries sustained by plaintiff through defendant's alleged negligence. The facts, which for the purposes of this appeal must be taken as true, are briefly as follows: In April, 1900, and for a number of years prior thereto the defendant was engaged in the manufacture of paper in its mill located at Oswego Falls, N. Y. As part of its equipment it had a machine known as a "rag cutter" which was on the second floor of the mill almost directly over the main power shaft which extended through the first story of the building near the ceiling. This "rag cutter," roughly described, consisted of a feed table about three feet long, one end of which connected with a large slowly revolving cylinder, with teeth or spikes upon its circumference. Underneath this cylinder was a stationary plate and behind this an arrangement of rapidly revolving knives. The rags, rope and other materials to be cut up were fed into the machine by the operator who stood at the end of the feed table. As this material reached the spiked cylinder it was drawn in and subjected to pressure which brought it into contact with the

knives where it was cut into small fragments. Near the end of the axle or shaft of this machine, but beyond the reach of the operator when standing at his position in front of the feed table, were two pulleys, one tight, the other loose, and both covered by a box. On the power shaft in the lower story there were also two pulleys similarly arranged. These two sets of pulleys were connected by a belt which, when on the tight pulleys, transmitted the power from the main shaft to the rag cutter and set it in motion. The only way in which this machine could be stopped in the room where it was located was to lift the cover or box from the pulleys on the machine's axle and, with a stick, to guide the belt from the tight pulley to the loose one; and in starting the machine this process was, of course, reversed. If the power was to be shut off at the main shaft, that was done on the floor below by means of a longer stick with which the belt was shifted to the loose pulley on the power shaft. Beyond these contrivances there were no means by which the machine could be stopped when the power shaft was in operation. Belt shifters and belt tighteners were then in common use in other mills upon machines of this character and by their use an operator could, without leaving his position, stop his machine almost instantly. Defendant then had in its mill a belt tightener which had been made for this machine, but which, for some unexplained reason, had not been used. On the 4th day of April, 1900, while the plaintiff was engaged in feeding this machine, his right hand became entangled in a mesh of string, and was being drawn slowly toward the spiked cylinder. In attempting to disengage it, the other hand was also caught in the mesh and both were drawn to the cylinder and upon the knives, where they were so mangled that the right hand was utterly destroyed and the left one was annihilated, with the exception of a small portion of the palm and a single finger. At this time the plaintiff had been employed by the defendant for nearly eighteen months, and had been operating this machine for over a year. He was forty years of age, ordinarily bright, and fully understood the construction and oper-

ation of this machine. He knew that a belt tightener had been made for it, but not used, and he was aware of the danger incident to the operation of the machine without either a belt shifter or a belt tightener. This is clearly established by his testimony to the effect that on the Saturday night preceding the Wednesday on which he was injured he told defendant's treasurer that the machine ought to be provided with a shifter, and that he would quit if one was not put on. He says that the treasurer then told him the mill would be shut down for other repairs the forepart of the following week, and while shut down they would put on a shaft or a tightener, and that, relying upon this promise, he continued work until he was injured.

Upon these facts two propositions are so clearly established that they are practically conceded. The first is that the defendant, as employer, furnished to the plaintiff, as its employee, a machine that was not reasonably safe, because it lacked the necessary appliance to stop it quickly in case of accident. The second is that the plaintiff, by accepting employment upon this machine, with full knowledge of its defects and dangers, voluntarily assumed the risks incident thereto; and this is equally true whether we regard the machine as lacking in improved appliances which the defendant was under no legal obligation to adopt, or as defective in respect of repairs which it was the defendant's duty to make. If there were nothing further in the case, the bare statement of these two propositions would conclusively bar plaintiff's claim for damages. But we must assume for the purposes of this appeal that there was a promise on the part of the employer to remedy the defects in the machine, in reliance upon which promise the employee remained at work, instead of quitting, as he had threatened to do. This is the point upon which the case turns. The plaintiff testified that on the Saturday night before the accident he told the treasurer of the defendant that this machine ought to have a shifter or tightener on it, and that he would quit work unless one was put on. He says that the treasurer told him the mill would be

shut down for other repairs the fore part of the next week, and while it was shut down they would put on a shifter or a tightener. The plaintiff further says he believed this and relied upon it or he would not have remained at work. He did stay and, on the Wednesday of the "next" week, before the mill was shut down or a shifter or tightener put on the machine, he was injured as described. Upon this evidence the plaintiff contends that the assumption of risk, which would ordinarily bar his right of action, was suspended during the running of the promise to repair, and for a reasonable time after the period when it was to be fulfilled. The defendant meets this argument with the assertion that such a promise, if made, cannot suspend or shift the risk assumed by the employee, because it was a promise not to be performed at once, but at a future time; that during the interim between the promise and the time for its fulfillment, and for a reasonable period thereafter, the plaintiff remained at work as much at his own risk as before the promise was made, because he knew it was not to be fulfilled at once, but at a later and specified time. The narrow and concrete question presented by these conflicting claims is whether such a promise at once absolves the employee from the risk which he had theretofore voluntarily assumed, or whether the risk is continued until the time when the master's promise to repair is to be fulfilled. Before proceeding to analyze the promise upon which plaintiff's cause of action and defendant's liability depend, let us consult the text writers and the reported decisions upon the subject. Judge Cooley in his work on Torts (pp. 559, 560) says: "If the servant having a right to abandon the service, because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good. Moreover the assurances remove all ground for the argument that the servant, by continuing in the employment, engages to assume the risk. So far as the particu-

lar peril is concerned the implication of law is rebutted by the
giving and acceptance of the assurance, for nothing is plainer
or more reasonable than that the parties may and should, where
practical, come to an understanding between themselves regard-
ing matters of this nature." Judge Thompson, in his work on
Negligence (vol. 2, p. 1009), thus states the rule : " But a serv-
ant does not by merely continuing in the service, after knowl-
edge of defects in the machine which he is obliged to use,
assume the risks attendant upon the use of such machinery.
Such a result only follows where he continues in the service
without objection or protest, or without being induced by his
master to believe that a change will be made. If the master
promises to remedy the defect, or has held out inducements to
the servant to remain in the service, the mere fact of his hav-
ing remained in the service will not, of itself, exonerate the
master from liability. If the servant after acquiring knowl-
edge of the defect, complains of it to the master, and the
master assures him that it will be repaired in a reasonable
time, he will not be presumed to have waived the defect by
remaining for such reasonable length of time in the service."
Other well-known text writers state the rule in substantially
similar terms. (Shearman & Redfield's Law of Negligence
[5d ed.], vol. 1, sec. 215, p. 372 ; Bailey on Master's Liabilities
for Injuries to Servants, p. 207 ; Dresser's Employers' Liabil-
ity for Injuries to Servants, sec. 115, p. 583 ; Whittaker's
Smith on Negligence, p. 172; Burrows on Negligence, p. 120 ;
Wood's Law of Master and Servant, p. 753, sec. 380.)

The following English authorities support the doctrine laid
down by the text writers above cited. *Holmes* v. *Worthing-
ton* (2 Foster & Finlason, 533) is to the effect that if a serv-
ant complains of the defect, and the master promises to
repair it, the servant will not be defeated merely because,
relying on the promise, he continues to work. In *Holmes* v.
*Clarke* (6 Hurlstone & Norman, 357) it was held that there
may be many cases where a servant can reasonably incur the
risk of working on defective appliances instead of abandon-
ing the service ; and, if the servant complains of the defect

to his master and the master promises to repair, it must be considered that the master takes upon himself the responsibility of any accident that may occur.

The United States Supreme Court and many of the state courts have also applied the same doctrine to a great variety of cases. In *Hough* v. *Railway Co.* (100 U. S. 225) the defendant made use of an engine having a defective pilot. Plaintiff's intestate, the employee, had been aware of the defect for some time; he had complained of its condition to the defendant's foreman; a new pilot had been made, but by reason of the negligence of the defendant it was not put on the engine. Upon these facts the Supreme Court, in an opinion by Mr. Justice HARLAN, approved of the rule as stated by Judge Cooley. In Illinois there are many cases illustrating the rule. In *Swift* v. *O'Neil* (187 Ill. 337) it was held that a servant did not assume a risk under a promise to repair where the master failed to place proper and suitable lights in the premises, although the servant knew of such condition. The court distinctly stated that where a master makes a promise to repair, he, and not the servant, assumes the risk between the time of the promise and the time for its fulfillment and for a reasonable length of time afterwards. To the same effect are *M. F. Co.* v. *Abend* (107 Ill. 44); *Weber Wagon Co.* v. *Kehl* (40 Ill. App. 584; affd., 139 Ill. 644); *Swift & Co.* v. *Madden* (165 Ill. 41); *Anderson Pressed Brick Co.* v. *Sobkowiak* (148 Ill. 578); *Illinois Steel Co.* v. *Mann* (170 Ill. 200), and *Donley* v. *Dougherty* (174 Ill. 582). So, in Wisconsin the rule was approved in *Ferriss* v. *Berlin Machine Works* (90 Wis. 541), and in Iowa in the cases of *Stoutenburgh* v. *Dow Gilman, etc., Co.* (82 Iowa, 179) and *Greenleaf* v. *Dubuque & Sioux City R. R. Co.* (33 Iowa, 52). The same is true of Michigan (*Lyttle* v. *Chicago & West Michigan Ry. Co.*, 84 Mich. 289; *Roux* v. *Blodgett & Davis Lumber Co.*, 85 Mich. 519); of Minnesota (*Snowberg* v. *N. S. Paper Co.*, 43 Minn. 532; *Harris* v. *Hewitt*, 65 N. W. Repr. [Minn.] 1085); of Ohio (*Manufacturing Co.* v. *Morrissey*, 40 Ohio St. 148); of Missouri (*Conroy* v. *Vulcan Iron Works*,

62 Mo. 35); of Pennsylvania (*Patterson* v. *Pittsburg, etc., R. R. Co.*, 76 Penn. St. 389), and Texas (*Gulf C. & S. F. Ry. Co.* v. *Donnelly*, 70 Texas, 371). In Massachusetts (*Counsell* v. *Hall*, 145 Mass. 468) it has been held that such a promise is a circumstance to be considered by the jury in determining whether the servant or the master has assumed the risk.

It is to be noted that in all of the authorities above referred to, the promise to repair has been spoken of in general terms and without emphasizing the point whether it was to be fulfilled at once, within a reasonable time, or at some definite future period. Some of the courts have drawn a distinction between a promise to repair at once, or within a reasonable time, and a promise to repair at a stated time in the future; and that is the theory upon which the very able discussion of Mr. Justice McLennan proceeded in the court below. Examples of this latter class of cases in other states may be found in *Standard Oil Co.* v. *Helmick* (148 Ind. 460); *I. & S. L. Railway Co.* v. *Watson* (114 Ind. 30), and *Wilson* v. *Winona & S. P. Railroad Co.* (37 Minn. 326). In the *Helmick Case* (*supra*) the defect complained of was an improperly fitted crank on a candle machine upon which the servant was employed. The master had ample notice of the existence of the defect and promised to repair it. The court in discussing this promise said: " But here the promise was not made to repair generally, which would imply that it was to be done within a reasonable time. The promise was to repair as soon as the present order was run out. How long that would take, whether a week, thirty days, six months or a year after the promise was made, is not found. For aught that appears it may have required thirty days or six months to run out that order. The promise was to repair at the end of that time. That being so, there could have been no inducement influencing the appellee to remain in the service and work with the alleged dangerous machine during that thirty days or six months, expecting the danger to be obviated as is the case where the promise is to repair generally, implying that it is to be done within a reasonable time." In the *Watson Case* (*supra*) the

discussion was over an alleged promise by the master to furnish his watchman with a lantern. Although the court there finally concluded that no such promise had been made, it said, " Now if there had been a promise to furnish a lantern at the end of thirty days that would not relieve the plaintiff from the risk incurred by working without a lantern for that thirty days when he says he had no expectation that a lantern would be furnished." In the *Wilson Case* (*supra*) it was held, " That a conditional promise by defendant's foreman to repair, if he gets time on some Saturday evening," is insufficient to take the case out of the general rule and that the servant assumed the risk.

Coming now to the decisions in this state, we find that, while the question involved in the case at bar has been incidentally discussed in a number of cases in this court, it has never been actually decided ; and although it appears to have been up in several cases in the Appellate Division it has not been given a prominent or controlling place in the written discussions. In *Healy* v. *Ryan* (25 N. Y. Weekly Dig. 23 ; affirmed without opinion in 116 N. Y. 657), the plaintiff, while employed by the defendant, was injured in a collision caused by a defective brake. He notified the foreman, who had authority to make repairs and who promised to make them. On appeal to the General Term of the fourth department it was held that the question of notice to the defendant and the promise to repair were properly submitted to the jury as bearing upon the question of plaintiff's freedom from contributory negligence. In the case of *Sweeney* v. *Berlin & Jones Envelope Co.* (101 N. Y. 525) there was no promise to repair and the injury to the plaintiff was occasioned by a machine that was not out of repair, but was not equipped with certain well-known safety appliances then in use on other kinds of machinery, but not on that particular kind of machines. This court, after stating the reasons why the defendant could not be held liable, remarked : " If the defect had been in the pedal and a promise made to repair that, and yet directions given for its use, it might be otherwise, but here the promise, if there was any, concerned a new appliance not attached to that par-

ticular machine nor to any machine of that make." In *Marsh* v. *Chickering* (101 N. Y. 400) the plaintiff, an ordinary laborer in the employ of the defendants, was injured while using a stepladder which was not "hooked or spiked" on the bottom. He complained to defendant's superintendent, who promised several times to have the ladder hooked or spiked. The judgment recovered by the plaintiff in the courts below was reversed in this court upon the ground that the ladder furnished was a reasonably safe appliance about which the servant knew as much as the master, and the fact that the servant "notified the master of the defect and asked for another instrument, and the master promised to furnish the same, in such a case, does not render the master responsible if an accident occurred." In *Dowd* v. *N. Y., Ontario & W. Ry. Co.* (170 N. Y. 468) plaintiff's intestate was killed in a collision between a car that had been "kicked" from one track to another, and the car under which he was at work. In discussing an exception that arose under the head of assumed risk, the court said : "If he (decedent) knew of the practice (kicking cars), and continued to work without any promise by the defendant to correct its methods, he assumed the danger and waived any claim for damages on account thereof." *Hannigan* v. *Smith* (28 App. Div. 178) was a case where the plaintiff, a hod carrier, was injured by a falling brick which had come down between the upper floor beams that were uncovered and unprotected. The defendant's attention had previously been called to the danger from this source, and he had promised to have the floor planked over, and told the plaintiff to go ahead with his work. The Appellate Division held that as the plaintiff knew as much about the danger as the defendant, the former was not free from contributory negligence, notwithstanding the promise of the latter to plank the flooring. In *McCarthy* v. *Washburn* (42 App. Div. 252) the plaintiff was employed in removing sand from the defendant's sand bank. The bank caved in and the plaintiff was injured. Several days before the accident the defendant's attention had been called to the dangerous condition of the bank, and he said to the plaintiff,

" I will secure the bank in a day or two, and I will warrant you that nothing will happen you." The *Hannigan Case* (*supra*) was cited with approval, and a dismissal of the complaint affirmed upon the ground that the danger was as obvious to the plaintiff as the defendant. In *Spencer* v. *Worthington* (44 App. Div. 496) the plaintiff, a mechanic in the machine shop of the defendant, was oiling a tool held by a ram, which moved up and down with great force and rapidity. He was using an oil can with a short spout. This was caught by the ram and bent over upon plaintiff's finger which was so injured that it had to be amputated. Until about three weeks before the accident the plaintiff had used an oil can with a long spout so as to avoid danger. This oil can had been carried away by some one. Plaintiff applied to the foreman for another can with a long spout, and protested several times against being compelled to use the can with the short spout. The foreman promised to get another can with a long spout. It was held that despite the promise of the foreman the plaintiff had assumed the risk because the character of the appliance and the danger from its use were as obvious to the plaintiff as to the defendant.

Thus, it will be observed, that the text writers upon the law of negligence, almost without exception, and a great majority of the reported decisions in other jurisdictions, support the doctrine that if a servant, who has knowledge of defects in appliances or machinery from which danger is to be apprehended, is induced to continue in the employment by the promise of the master to repair the defect, the risk during the running of the promise and for a reasonable time thereafter is that of the master and not of the servant. In a few of the cases outside of this state, above alluded to, there has been a sharp accentuation of the distinction between a general promise to repair and a promise to repair at a definite future time, and upon this distinction is based the theory, applied in the court below, that under a promise to take effect in the future the risk remains that of the servant, until the time for the fulfillment of the promise and for a reasonable time thereafter. Then, in this state,

as we have seen, there are cases in which it has been held that in the case of simple appliances or conditions, such as unspiked stepladders, falling bricks, short-spouted oil cans and insecure sand banks, the servant continues the employment at his own risk notwithstanding the promise of the master to repair or improve. But the decisions in these last-mentioned cases are supported by other principles not involved here, so that it would unduly lengthen this opinion without profit, to attempt to explain or distinguish them.

From the foregoing review of the authorities it is clear that, although the courts of this state have not hitherto had occasion to definitely adopt the rule under which a servant may be relieved from an assumed risk of his employment by the master's promise to remove the danger which creates the risk, the rule is so generally recognized as a part of the jurisprudence of this country, and is so strongly supported by reason and justice, as to justify its adoption by this court. At this point the question arises, however, whether the rule shall be adopted without qualification, or as limited by some of the courts, and particularly by the Appellate Division, from whose order this appeal is taken. Since, under our construction of the master's promise herein, it may fairly be said to fall within the general rule without qualification ; and in view of the fact that under the so-called Employers' Liability Act (Ch. 600, L. 1902) now in force, the rule above adverted to may in the future present a question of purely academic interest, we do not now decide the general question whether it would be wiser to adopt the rule in its entirety, or as modified by the limitation referred to. That question we leave open for future decision if it ever arises.

This conclusion leaves nothing further for discussion except our construction of the promise upon which the plaintiff relies, and that can be done very briefly. The defendant's promise to repair the machine upon which the plaintiff was employed was made on Saturday night, at the close of the working week. It was to the effect that the repairs would be made in the fore part of the following week, when the mill was to be

shut down for other repairs. As the plaintiff was only an ordinary laborer, it is not to be presumed that he was in the confidence of his employer to the extent of being informed of the precise time when the mill was to be shut down. For aught that appears in the case, the employer himself may not have known just when that would occur. Under these conditions the plaintiff may have gone to work on Monday morning in the expectation or belief that the mill might be shut down at any moment without further notice to him, and we cannot say as a matter of law that this would have been an unreasonable view of the defendant's promise. The expression, "fore part of the week," was as applicable to Monday or Tuesday as to Wednesday, the day of the accident. The promise made, if not strictly the equivalent of a promise to repair at once, certainly seems to be capable of the construction that it was to be fulfilled within a reasonable time, and if that is true then the plaintiff was justified in remaining at his work because, during that reasonable time, covered by defendant's promise, the risk theretofore voluntarily accepted by the plaintiff was assumed by the defendant.

We, therefore, think that the order of the Appellate Division should be reversed and the judgment for the plaintiff entered upon the verdict should be affirmed, with costs.

Parker, Ch. J., Gray, O'Brien, Bartlett, Martin and Cullen, JJ., concur.

Order reversed, etc.