LEAUX v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department.   November 13, 1903.)

1. MUNICIPAL CORPORATIONS—PUBLIC PARKS—LEASE—PERSONAL INJURIES—
LIABILITY.
    Where a lessee of a portion of a public park had exclusive control of
such portion, he was liable to an employé for personal injuries received
by reason of the lessee negligently permitting a portion of the premises
to remain defective.

2. MASTER AND SERVANT—PERSONAL INJURIES—DEFECTIVE PREMISES.
    Where an employé slipped on a piece of a banana peel on the pavement
on the premises, which he necessarily passed and repassed in the course
of his employment, and his foot struck the broken cover of the manhole
of a sewer, and, in consequence of the defective condition of the cover,
he fell into the sewer, the master was liable if he negligently permitted
the sewer to remain defective.

3. SAME—TRIAL—QUESTION FOR JURY.
    An employé, noticing the defective condition of the cover of a manhole
of a sewer on a portion of the premises on which he was employed, in-
formed the master thereof, and was told that it would be repaired.  About
eight days thereafter the employé slipped on a banana peel on the pave-
ment, his foot struck the defective cover, and he fell into the sewer.
Held, in an action against the master, that the question of his negligence
in failing to provide a safe place to work should have been submitted
to the jury.

4. SAME—CONTRIBUTORY NEGLIGENCE.
    The employé having notified the master immediately on noticing a de-
fect, and remaining on promise that it would be repaired, was not, on
being injured by reason of such defect about eight days thereafter, guilty
of contributory negligence.

Appeal from Trial Term, New York County.

Action by Julius Leaux against the city of New York and James
Jacobs.  From a judgment dismissing the complaint as against said
James Jacobs, plaintiff appeals.  Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTER-
SON, INGRAHAM, and LAUGHLIN, JJ.

Frederick Wiener, for appellant.
Alexander Thain, for respondent.

INGRAHAM, J.  The defendant Jacobs was occupying the prem-
ises under an agreement with the department of parks of the city of
New York, whereby the city of New York, by the department of
parks, "granted and by these presents do grant to the said party of
the second part the privilege of selling refreshments in the restau-
rant building near the Arsenal in said park, * * * for the term
of five (5) years from the first day of February, 1901, unless this agree-
ment be sooner revoked, canceled or annulled, as herein provided."
In consideration thereof Jacobs covenanted and agreed to pay to the
department of parks 10 per cent. of his gross receipts, and "to make
at his own proper cost and expense from time to time, as may be re-
quired, all repairs, renewals and renovations necessary to place and
maintain said building in good and proper condition of said commis-

¶ 4. See Master and Servant, vol. 34, Cent. Dig. § 686.

sioner during the period of this license. All such repairs, renewals and renovations shall be made under the direction of said commissioner";.and that "he will indemnify and save harmless the said parties of the first part and said department from all suits or proceedings to recover damages for injuries received by or through the said party of the second part, his agents, servants or employés." This agreement was dated the 25th day of January, 1901. The plaintiff was an employé of Jacobs, engaged in manufacturing ice cream for use in the restaurant, and had been so employed for the summer of 1901. The premises occupied by Jacobs consisted of a restaurant and several buildings used in connection therewith, which were all inclosed. At the rear of the restaurant there was a kitchen and icehouse and a shed for the storing of materials, and between the icehouse and the shed there was a passageway paved with stone pavement. In the middle of this passageway between the icehouse and the shed there was a manhole for a sewer. Jacobs' employés were in the habit of removing this manhole and throwing refuse into the sewer. The plaintiff testified that about the 1st of September he noticed that the iron cover to this hole was broken so that it was loose; that on that day he informed Jacobs of the fact that this cover was broken, and Jacobs replied that he would send for a man to fix it; that the plaintiff continued his work, and as a part of his duty it was necessary for him to obtain ice from the house and put it in an ice-breaking machine that was located against the icehouse in the immediate vicinity of this manhole; that on the morning of the accident, eight, nine, or ten days after he had first noticed that the cover to the hole was broken, he took a piece of ice from the house, and carried it through the passageway to the breaker, and while putting the ice in the breaker his foot slipped; that he struck the cover to this manhole, and fell into the sewer, sustaining injuries to recover for which he brought this action. The plaintiff says he slipped upon a piece of banana peel, or something upon the pavement, just what, he does not know, but, slipping upon the pavement, his foot struck this broken cover to the manhole, and in consequence of the condition of the cover he fell into the sewer.

At the end of the plaintiff's testimony the complaint was dismissed as against Jacobs. We think this was error, and that the question should have been submitted to the jury. The agreement with the department of parks gives Jacobs the right to use the restaurant building, but as a matter of fact Jacobs had under this authority the exclusive control of the building and passageway within the inclosure, and occupied these buildings for the purpose of carrying on his business. From the testimony it would appear that the plaintiff, to do his work, was required to use this passageway from the icehouse to the breaker, and while breaking the ice had to stand in the passageway quite close to the manhole, and while in this position, engaged in his master's business, he fell into the manhole and was injured. Undoubtedly the defendant was not responsible for the fact that the plaintiff slipped upon the banana peel, or whatever substance was upon the pavement; but the jury were justified in finding that, if the cover to the manhole had been in repair, the plaintiff would not have fallen

into the sewer, and for the injuries sustained in consequence of his falling into the sewer the jury would have been justified in finding the defendant liable.   The plaintiff being in the defendant's employ, it was the defendant's duty to furnish him with a safe and proper place to work, and it is for a failure to perform that duty for which the defendant can be held liable.   It was not the plaintiff that placed this ice breaker in the position in which it was placed; and, in order to do the work that he was required to do, it was necessary for him to use the breaker.   It was certainly as much the defendant's duty to see to it that the pavement in front of the ice breaker where the plaintiff was required to stand was in a safe condition as it was that the machine itself was proper and safe to use, and a failure to keep the pavement in such a condition would be a failure to perform the duty of providing the plaintiff with a safe and proper position in which to do his work.

It is not necessary for us to determine that, as between the defendant Jacobs and the city of New York, Jacobs was bound to keep this manhole cover in repair.   It is sufficient if the breaker was in such a situation in relation to the manhole that one using it would be apt to fall in if the cover was unsafe, upon notice that it was unsafe to throw the burden upon the defendant of either moving the breaker to a safe place, or seeing that such repairs were made as would make the manhole safe.   That the master owed to his servant the duty of providing a place reasonably safe for the work which he was directed to do, and that a failure to perform such a duty makes the master liable to the servant for any injuries sustained in consequence of a neglect of that duty, is a proposition too well settled to require the citation of authorities.   Pantzar v. Tilly Foster Mining Co., 99 N. Y. 368, 2 N. E. 24; Kranz v. Long Island R. R. Co., 123 N. Y. 1, 25 N. E. 206, 20 Am. St. Rep. 716.

Nor do we think that the plaintiff was, as a matter of law, guilty of contributory negligence which would prevent his recovery.   The plaintiff undoubtedly had knowledge of the unsafe condition of the cover to the manhole, and with such knowledge his continuing to work there would be an assumption of the risk, and would relieve the master from responsibility, were it not that the plaintiff brought home to the knowledge of the master the fact of the insecure condition of the cover to the manhole, and in response to that notice the master promised to have it repaired.   In the recent case of Rice v. Eureka Paper Company, 174 N. Y. 385, 66 N. E. 979, the Court of Appeals have decided that, if a servant who has knowledge of defects in appliances or machinery from which danger is to be apprehended is induced to continue at work on the premises by the promise of the master to make the necessary repairs, the risk of employment becomes that of the master, and not of the servant, and the master is responsible for any damages which the servant may sustain in the ordinary use of the appliance by reason of such defect.   This rule, we think, applies to this case.   Immediately upon the discovery of the unsafe condition of the manhole, the plaintiff communicated the fact to the master, and received from him a promise that he would send for a man to repair it.   Relying upon that promise, the plaintiff continued to work.   It was the promise of the defendant to make the repairs necessary

to render the place a safe one for the employé to work that threw upon the defendant the responsibility for any accident that happened to his employé resulting from a failure to keep the premises in a safe condition.

We think, therefore, that the dismissal of this complaint cannot be sustained, and that the judgment dismissing the complaint as to Jacobs should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.