(98 App. Div. 332)

HEMPSTOCK v. LACKAWANNA IRON & STEEL CO.

(Supreme Court, Appellate Division, Fourth Department.   November 15, 1904.)

1. MASTER AND SERVANT—ASSUMPTION OF RISK—DEFECTIVE APPLIANCES—PROMISE TO REPAIR.

Where there are several gangs of men working together for the same master, each gang having a separate foreman, the promise by the foreman of one gang to the foreman of another that he will repair a defective scaffold will not remove the latter's assumption of risk in continuing work on the scaffold without knowing whether it has been repaired.

2. SAME—QUESTION FOR JURY.

Plaintiff discovered a defect in the scaffold on which he was to work, and called the attention of the proper person thereto, who promised to repair it. Held, that whether plaintiff was guilty of contributory negligence in going on the scaffold without knowing whether it had been repaired was for the jury.

Stover and Spring, JJ., dissenting.

Appeal from Trial Term, Erie County.

Action for personal injuries by Harry Hempstock against the Lackawanna Iron & Steel Company. From a judgment in favor of plaintiff for $1,700 damages and costs, and from an order denying defendant's motion for a new trial on the minutes, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Louis L. Babcock, for appellant.
Hamilton Ward, for respondent.

McLENNAN, P. J.   At the time of and for some time prior to the accident, the plaintiff, who had had many years' experience in the erection of structural ironwork and furnace building, was in defendant's employ as foreman of a gang of riveters, engaged in erecting a steel tank about 18 feet in diameter, and which was then about 60 feet in height. To enable the riveters and other employés to perform their work, a staging was extended up within the tank, section by section, to the height of the steelwork. On the top of it there was erected a temporary scaffold five feet high, extending clear around the inside of the tank, composed of boards and timbers of suitable size, with which, among other things, several brackets of the ordinary pattern were constructed and fastened to uprights, and upon such brackets boards were placed for the workmen to stand upon. When an additional tier of steel sheets was added to the tank, such temporary scaffold was taken down, the timbers and boards composing it piled on the platform immediately

below, another section was added to the staging, and the low, temporary scaffold was again erected on top of it as before, and so on, repeating the process every time a five-foot tier of steel was put in place. The staging and scaffold were erected by a gang of carpenters in defendant's employ, of whom one Stoeckel was foreman. He selected the timbers to be used, of which, so far as appears, the defendant furnished sufficient of suitable quality. Late in the afternoon of the day previous to the accident the carpenters were engaged in taking down the temporary scaffold, and were piling its parts on the platform below. The plaintiff testifies that while such timbers were lying upon the platform he observed that one end of a brace of one of the brackets was split, and was unsuitable for use unless fixed; that he called Stoeckel's attention to the fact; that he was told to mind his own business; that Stoeckel said, "I will fix it, and attend to my part of the work;" that thereupon the plaintiff left the structure, and soon thereafter the premises; that when he returned the following morning the erection of the temporary scaffold had been practically completed, and he, with certain of his men, went upon it and commenced work without making any attempt to learn whether or not the defective piece of timber had been again used or fixed, although he says he had it in mind, and that by a glance he could have ascertained the fact. The evidence tends to show that soon after the plaintiff began work, and while he was standing over the bracket of which the defective piece of timber formed a part, it settled from one and one-half to two inches, which caused him to lose his balance, slip, and fall to the platform five feet below, and that he thus sustained the injuries of which he complains. Although the plaintiff's version of the transaction was contradicted by the evidence introduced on behalf of the defendant, we must assume that the jury found the facts to be as testified to by him.

It is unnecessary to consider the weight of the evidence, because, as it seems to me, the judgment and order appealed from must be reversed on account of erroneous rulings made by the learned trial court, which were prejudicial to the defendant, and to which it duly excepted. After the court had finished his charge, the following took place:

"Mr. Ward (Plaintiff's Counsel): I ask the court to charge the jury that the moment the promise to repair was given them the assumption of risk was removed for a reasonable time. The Court: That would depend upon the further question as to when the promise was given, and whether it was given by a person having authority to bind the defendant. Mr. Ward: Do I understand your honor to charge that, if the jury find that the promise was given by a person in authority, then that the assumption of risk was removed for a reasonable time? The Court: Yes. Mr. Babcock (Defendant's Counsel): I except to that, your honor. The Court: That is the law. Mr. Ward: I mean in its application to this case. The Court: That is the law. I will not charge it in this case, because it does not appear to have been given by any person whose duty it was to repair, or who had authority to direct. It was given by a mere—if it was given at all under the testimony here—by a man who had charge of the riveters, as I understand the testimony. Mr. Ward: The plaintiff has sworn that Stoeckel said he would fix it, and it appears here indisputable that that was Stoeckel's business. The Court: Well, if that is true, then I will charge your request. The jury will recollect

the testimony. Mr. Babcock: I except to that. The Court: I did not understand that it is claimed that Stoeckel so stated. Mr. Ward: That is all."

It is undisputed that the plaintiff did testify as stated by his counsel, viz., that "Stoeckel said he would fix it" (the brace), and it also appeared undisputed that that was Stoeckel's business. The court therefore charged expressly and without qualification that, if Stoeckel promised to fix it (the brace), and it was Stoeckel's business to do so, from the moment such promise was made the assumption of risk was removed for a reasonable time.

The instructions thus given did not state the correct rule of law applicable to the facts of the case. It is the rule that when a master installs a machine, and permits it to become so out of repair as to make it dangerous for an employé to operate the same, if the master promises to repair and remedy it such employé may continue to operate the machine, although informed as to its defective condition, and fully appreciating the dangers incident thereto; and, if injured because of such defects, he may recover the damages resulting therefrom. In such case the assumption of risk by the employé, although obvious and fully understood, is removed. Rice v. The Eureka Paper Company, 174 N. Y. 385, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585. Such rule, however, does not apply where, as in the case at bar, the promise to repair relied upon was made by a foreman of one of many gangs of men all engaged in the prosecution of one enterprise for a common master to a foreman of another one of such gangs; otherwise, by an interchange of such promises by the several foremen, all would be relieved from the assumption of risk without the knowledge of the master. Stoeckel, the foreman of the carpenters, represented the defendant in building the scaffold in question, and it was bound by his acts in its construction; but he was not authorized to make a contract with a fellow foreman which would either increase or decrease the liability of his employer. The assumption of risk by an employé rests upon contract, express or implied (Dowd v. N. Y., O. & W. Ry. Co., 170 N. Y. 459, 63 N. E. 541), and it can only be removed or eliminated by like contract. But Stoeckel had no authority to make a contract of any kind, either express or implied, for or in behalf of the defendant. How or when was Stoeckel authorized to agree with the plaintiff, a fellow foreman, in effect that he would properly perform his work, and that the plaintiff might use any structures erected by him, with his eyes shut, and rely solely on such agreement? The general rule is well settled that a servant assumes all risks incident to his employment and all dangers which are obvious and apparent. Crown v. Orr, 140 N. Y. 450, 35 N. E. 648; Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 986, 32 L. R. A. 367.

Again, we think the rule laid down in the Rice Case, supra, does not apply where the promise relied upon relates to the selection of material with which to erect a structure of the kind in question. In that case the master had installed the machine, knew that it was defective, and knew that its operation was thereby made dangerous, and it made the promise to repair. In the case at bar the

master furnished ample suitable material for the proper construction of the scaffold, and the foreman made use of a bracket which was defective, but before doing so he assumed to agree with the plaintiff that he would not use such defective bracket; in other words, that he would erect the scaffold in a proper manner. Suppose Stoeckel had promised all of defendant's employés working in or about the steel tank in question that he was going to use only new and perfect timbers in the construction of any scaffolds erected by him. Would such employés, one or all of them, because of such promise, if they went upon a scaffold which they knew to be defective and unsafe, be entitled to recover in case of injury?. This precise proposition must follow if the correct rule was stated by the trial court. As we have seen, Stoeckel, in erecting the scaffold, represented—was the alter ego of—the defendant. It was liable for any negligence on his part which resulted in injury to another, provided such other was not guilty of contributory negligence, or did not use it when the danger incident to such use was known and obvious and fully understood. We conclude that the promise of Stoeckel which is relied upon did not remove the assumption of risk by the plaintiff for the reason that he had no authority to make such promise. It was, therefore, a question for the jury to determine upon all the evidence whether or not the plaintiff knew or ought to have known of the defective condition of the scaffold, and whether or not he assumed the risk of an accident when he went upon it.

The question of plaintiff's contributory negligence was also for the jury. The defendant claimed that the plaintiff was negligent because he knew that the bracket in question was to be used by Stoeckel, and that, from what he states Stoeckel said to him, he had no right to assume that it would be fixed; but that, in any event, in the exercise of reasonable care and prudence he ought to have ascertained whether it had been fixed before going upon it, which he could have done "by a glance." That question, however, was taken from the consideration of the jury by the court by charging as requested by the plaintiff's counsel. They were told, in substance, that, if the promise adverted to was made by Stoeckel, then plaintiff's knowledge as to the condition of the scaffold was immaterial.

It is concluded that for the reasons above stated the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event.

HISCOCK, J. I concur in the reversal of the judgment appealed from upon the ground that upon all of the evidence the court was not justified in charging, as it did, the rule requested by plaintiff's attorney: "That the moment the promise to repair [the bracket in question] was given them, the assumption of the risk was removed for a reasonable time." Evidence was given on behalf of plaintiff tending to show a report of the defect in question to two different employés of the defendant, namely, one Haley and one Stoeckel. Both of these employés denied the conversations imputed to them of notice and a promise to re-

pair.   Haley was a superintendent or general foreman, and therefore presumably invested with extensive authority and action by which to bind the defendant.   The charge of the learned court upon this subject at folios 358 and 359 was not based upon anything which the jury might find was said to or by this superintendent, but was based entirely upon a finding in favor of plaintiff's version as to what took place with Stoeckel.   Stoeckel merely had charge of a gang of carpenters, and, while they were subject to the duty of preparing these scaffolds, it does not seem to me that Stoeckel had any such general authority as authorized him in behalf of defendant to make an agreement to repair which would relieve the plaintiff and subject defendant to an unusual liability in respect to the alleged defective brace.

Further than this, there is not incorporated in the charge permitting plaintiff to be relieved from assumption of risks on account of a promise to repair, what I regard as the necessary element—that the plaintiff by such promise was induced to continue in the employment of the defendant.   I think that the alleged reply of Stoeckel when spoken to by plaintiff was, to say the least, ambiguous and uncertain enough so that the learned trial judge should have instructed the jury that plaintiff would not be relieved from assumption of risks on account thereof, unless he was led and induced by it to continue in his employment. This element seems to be necessary as a basis for the rule invoked by plaintiff in this case.   Rice v. Eureka Paper Co., 174 N. Y. 385, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585.

Still further, assuming that Stoeckel was authorized to make the promise on behalf of defendant, and that he did make it, and that on account thereof plaintiff continued in his employment, it seems to be a grave question whether the case at bar would come within the rule laid down in the Rice Case, or whether within the authority of those cases involving accidents in the case of simple appliances—such as unspiked stepladders, falling bricks, insecure sand banks, and improperly constructed floorings—where it is held that the servant continues the employment at his own risk notwithstanding the promise of the master to repair or improve.   Rice v. Eureka Paper Co., supra, pages 385, 395–397, 174 N. Y., pages 979, 982, 983, 66 N. E., 62 L. R. A. 611, 95 Am. St. Rep. 585.

WILLIAMS, J., concurs.

STOVER, J. (dissenting).   The action is negligence.   Plaintiff was an employé of the defendant, which was engaged in erecting drums, which were round, about 100 feet high, and about 18 feet in diameter. They were constructed of steel plates about three-eighths of an inch thick. The plates were about five feet wide, and, as one witness says, it took five to make the circle of the drum.   The plates were riveted, and in riveting a scaffold was built upon the inside, and, as the work progressed, was extended upward.   In addition to this, a temporary scaffolding of circle boards was placed on the outside, supported by brackets of 2x4 timbers made in triangular form; that is, a vertical and horizontal timber with the ends fastened by a diagonal timber.   The claim of the plaintiff is that the bracket used to support the circle boards was

defective, in that a cleat to which a portion of it was nailed had become split and unfit for use. The plaintiff saw a defective bracket upon the work, and called the attention of the foreman to it, and the foreman, according to plaintiff's contention, said to him "to mind my own business; he would fix it and look after his part of the work." The claim of the plaintiff is that at this time the bracket was not in position supporting the boards, but was lying upon the platform, having been in use with other material there, and that the carpenters were about raising circle boards for use upon a new section of the drum. The contention of the defendant is that, if the plaintiff saw the defective bracket, he assumed whatever risk there was in its use, and cannot recover. The trial court submitted to the jury the question as to the assumption of the risk with an instruction that, if the promise to repair was given, then the assumption of risk was removed for a reasonable time. The defendant's attorney requested the court to charge "that, inasmuch as the plaintiff knew that the north scaffold was unsafe when he left the night prior to the accident, he was not justified in assuming it had been made safe when he went upon it the next day, under the facts and circumstances of this case." The court declined to change the charge upon that subject. The court charged the jury: "The usual rule of law is that a risk which is obvious—which a man working can see for himself —he assumes. If the master does not remedy this condition so as to make it more safe, the law presumes that the man so working and continuing to work assumes it, and, if he is injured in consequence of that, there is no liability." The court was asked to charge "that, if the defective condition of the board was so obvious to him that he could have seen its condition at a glance, the jury should find a verdict for the defendant." This was declined, and an exception was taken.

The evidence of the plaintiff was that when he went to work the next morning the bracket had been put in position, and was not lying on the platform where it could be seen; and a description of the position of the bracket when in use shows that it ordinarily would be covered by the planks upon which the circle boards rested, so that it could hardly be said that the evidence would warrant a conclusion that the defect of the bracket when in use could be discovered at a glance. The court had already charged the true rule of law, namely, that, if the risk was obvious, and one that the man might see for himself, he assumed it, and was not bound to further refine upon that proposition. The instruction that, if he could see it, he assumed the risk, was sufficient, and set forth the true rule of law.

As to the request that if he knew the scaffold was unsafe when he went away at night he was not justified in assuming that it had been made safe when he went upon it the next day, this request leaves out of consideration the proposition that the question of assumed risk under all the facts and circumstances was a question for the jury to determine. In order to sustain the proposition as requested by the defendant, it must have been conceded that the plaintiff was bound to inspect and discover for himself whether the bracket had been repaired or not. We do not think that under the circumstances of this case this view is correct. Whether he should have done so or not was a question for the jury to determine, as the question of assumed risk in the case was

one of fact; and in determining that, whether or not he should have inspected, if at all material, was to be judged by the jury as one of fact, and not one of law.   In the absence of any knowledge, he had a right to assume that it was safe, and the fact that the scaffold fell was prima facie evidence of the defendant's negligence.  Stewart v. Ferguson, 164 N. Y. 553, 58 N. E. 662.  If, therefore, it was not his duty to inspect the scaffold, whether or not he was guilty of contributory negligence by reason of relying upon the statement of the superintendent or assumed the risk was one of fact for the jury to determine, and the court was right in not determining that question as a matter of law. The contention of the plaintiff, which is not disputed, was that at the time he saw the bracket it was not in use, and it is not to be assumed as matter of law that he knew, or ought to have supposed, that the master would use the bracket in the erection of the new scaffold.  The fact upon which the legal proposition is based is so far at variance with the proof that we think it would have been error for the trial judge to have instructed the jury in accordance with the request, but, having already laid down the correct rule of law as to the assumption of the risk, and having left the jury to determine whether he did, under the proof, assume the risk, the court properly refused to say that the plaintiff was not justified in remaining at work.  Rice v. Eureka Paper Co., 174 N. Y. 385, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585.  Under the rule in the case last cited the assumption of the risk was suspended for a reasonable time, and it was for the jury to determine in this case whether such reasonable time had elapsed or not.  The burden of proving the assumption of risk was upon the defendant.

The evidence as to the manner in which plaintiff fell—whether due to a defective bracket or some other condition—was contradictory, and this evidence, as well as the other evidence, upon the facts was sufficient to warrant the jury in finding either way, and we cannot say that the finding of the jury was against the weight of evidence.

We think the questions of fact were properly submitted to the jury by the trial judge, and the judgment should be affirmed.

SPRING, J., concurs.