## MEIGEL v. E. V. CRANDALL OIL & PUTTY MFG. CO.

(Supreme Court, Appellate Division, Second Department. December 30, 1910.)

1. MASTER AND SERVANT (§ 217*) — ASSUMPTION OF RISK — DEFECTIVE MACHINERY.

A competent and intelligent employé having continued at work at his machine, without promise of any one in authority to fix it, after knowing for weeks of a defect in the ratchet whereby the lever would slip, as it did several times a day, assumed the risk; whether the machine be regarded as lacking in improved appliances, which the master was under no legal obligation to adopt, or as defective in respect of repairs, which it was its duty to make.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 587; Dec. Dig. § 217.*]

2. MASTER AND SERVANT (§ 276*)—INJURY TO EMPLOYÉ—PROXIMATE CAUSE—EVIDENCE.

Evidence, in an action for injury to an employé while taking putty from a machine for mixing it, held insufficient to show that a defect in a ratchet, permitting the slipping of a lever, was the cause thereof.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 276.*]

3. MASTER AND SERVANT (§ 243*)—ASSUMPTION OF RISK—DISOBEDIENCE OF RULES.

The master having posted a notice near a putty mixer that employés should not place their hands inside the pan thereof while machinery was in motion, and never having acquiesced in any one disregarding the rule, an employé, who deliberately violated it, assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 759; Dec. Dig. § 243.*]

Hirschberg, P. J., dissenting.

Appeal from Trial Term, Kings County.

Action by George Meigel against the E. V. Crandall Oil & Putty Manufacturing Company. From a judgment for plaintiff, and from an order denying a motion for a new trial on the minutes, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, THOMAS, and CARR, JJ.

Bertrand L. Pettigrew, for appellant.
Martin T. Manton, for respondent.

WOODWARD, J. A more or less eminent English jurist is quoted as holding the doctrine that a plaintiff presumptively has a cause of action and is entitled to recover, and this doctrine, in actions for negligence, has more or less distinguished executive sanction; but the courts of this state are, as yet, limited by positive rules of law, and the plaintiff cannot recover upon the case which is presented by this

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

record. The case has been tried twice, each time resulting in a verdict for the plaintiff, and, if only the question of the weight of evidence were involved, we might feel it our duty to acquiesce in the result; but, in the view we take of this controversy, the plaintiff should have been nonsuited, or a verdict should have been directed, on the ground that the plaintiff assumed the risks of the employment. The plaintiff had been in the employ of the defendant in operating a putty-mixing machine from the 11th day of September, 1906, to the 23d day of January, 1907, on which day he lost three of his fingers while taking putty from a side door in the mixing pan while the machinery was in operation. The negligence alleged is that the lever which controlled a part of the mechanism slipped from the point where it was placed by reason of a defect in the ratchet, and reversed the action of the scraper, and resulted in the injury.

Assuming for the moment that this was the proximate cause of the accident, the plaintiff's own evidence establishes that this defect was known to him for a period of several weeks; that the same thing had occurred, as he says, on almost every batch of putty which he had mixed for weeks, and he was mixing a batch about every 12 or 13 minutes during the day. This is a common-law action, and while the plaintiff introduced some evidence to the effect that one Fisher, who worked on a machine near him, had been told of the defect and had promised to have the same fixed, the learned court instructed the jury, without objection, that there was no evidence sufficient to justify a finding that Fisher had any authority to promise the plaintiff that repairs would be made on the mixer which the plaintiff was operating. This takes the case out of the exception to the general rule that the plaintiff, by accepting employment upon this machine, with full knowledge of its defects and dangers, voluntarily assumed the risks incident thereto, and that this is equally the rule whether we regard the machine as lacking in improved appliances which the defendant was under no legal obligation to adopt, or as defective in respect of repairs which it was the defendant's duty to make. Rice v. Eureka Paper Co., 174 N. Y. 385, 389, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585; Pearsall v. New York Central & H. R. R. R. Co., 128 App. Div. 397, 399, 112 N. Y. Supp. 872, and authorities there cited, affirmed without opinion, 198 N. Y. 632, 92 N. E. 1094. In the Rice Case, supra, there was a promise on the part of one of the officers of the company to make repairs, and it was held that the plaintiff, by remaining in the employment pending such repairs, did not assume the risk; but the general rule was stated and acknowledged as the law, and we are unable to distinguish this case. There is no suggestion that the plaintiff was not a competent workman; no suggestion that he did not know everything that any other intelligent man might have known about it, for it was a simple machine, and it affirmatively appears from his own testimony that he was fully aware of the defect whch is now relied upon, and that he had been in the possession of this knowledge practically all of the time that he was employed upon the machine. He made no complaint of this to his employer; he merely told a fellow workman, he says, of the defect and threatened to quit. The fellow

servant denies this; but in view of the fact that the court charged that Fisher, the fellow servant, was without authority in the premises, this could not have any bearing on the question, and it was error to submit it to the jury.

But beyond this, there is no evidence in the case that this was the proximate cause of the injury, if we may except the inference drawn by the plaintiff himself but which does not appear to be justified by the facts known to him. The putty-mixing machine consisted of a large pan, with flaring sides like a dishpan. Through the center of this pan was a vertical shaft, and to this shaft was geared a large stone roller which appears to have followed a course around the center of this pan. In front of this heavy roller was a knife or scraper, which was adjusted to run at an angle which would throw the ingredients of the putty toward the center, thus facilitating the mixing under the revolving roller. This knife or scraper ran close to the sides of the pan, and at one side of this pan was a door which was opened when the putty was mixed, and through this door the putty was permitted to run out and was placed in cans by the mixer. The plaintiff had mixed a batch of materials and was engaged in running off the putty. This was done by permitting the machine to move in the ordinary way until a portion of the putty had been thrown out, then the lever was moved and the knife or scraper was reversed, so that the dull end of the same followed the inside of the pan and pushed the putty toward the outside of the same, and as it passed the door it was crowded out. The plaintiff claims to have made the reverse and then to have put his hands inside of this door to drag out some of the putty which did not come out freely, and that while so engaged the lever slipped from its place and the knife reversed, catching his hand between the side of the door and the knife, cutting off three of his fingers. There is not a particle of evidence, so far as we discover, which tends to show that there would not have been practically the same result if the plaintiff had placed his hand where it would have been caught between the blunt end of the scraper and the door, and it is not even conclusively shown that this is not what actually did occur. The plaintiff testified that he reversed the lever, that he was sure that he placed the same in the proper notch, and no one testifies that the lever did not in fact remain where it was placed. The plaintiff says that he did not see the knife or the lever after the accident, and no one else offers proof on this point. But, assuming that the plaintiff's inference is right, and that the lever actually reversed, there is still no evidence that the accident happened because of this fact; the plaintiff might have been injured just as seriously, or more so, by being pinched with the blunt end of the scraper as it passed by the open door, and the inference is irresistible, therefore, that the accident was due, not to the reversal of the lever, but to the fact that the plaintiff deliberately placed his hands inside of the door of this pan, knowing that the machinery was turning. Here again he must be deemed to have assumed the risks, for the evidence was clear that the defendant had not only not required this, but that it had posted a notice near the machine that employés should not place their hands inside the pan while the machinery was in motion.

In this connection the learned court was asked to charge the jury, that, if they "find that the plaintiff in putting his hand through the door of the pan at the time he received his injury knowingly violated a rule of the defendant, he cannot recover," and this request was refused; the court saying: "No, you may take that into consideration, gentlemen." Obviously the defendant was entitled to this instruction. There was no evidence that the defendant had ever acquiesced in any one disregarding the rule, and to say that a man can knowingly disregard a rule adopted for his safety, and charge the master for an injury growing directly out of the violation of that rule, is to hold a degree of liability which no adjudicated case has ever asserted, so far as we can discover; it would certainly violate every normal conception of justice and punish for the performance of a duty.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event.

JENKS, THOMAS, and CARR, JJ., concur. HIRSCHBERG, P. J., dissents.