## CITRONE v. O'ROURKE ENGINEERING CONST. CO.

(Supreme Court, Appellate Division, Second Department.  June 8, 1906.)

MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMPTION OF RISK—PROMISE TO REMEDY DEFECT.

> Where, on complaint of a servant as to the safety of the place where he was at work, the master told him to go to work, and that after a certain time it would be repaired, the master assumed the risk of injury from the time of the promise until the time specified; contentions that he assumed the risk only after the time specified, and assumed it after the expiration of a reasonable time from the promise, being untenable.

> [Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 638–640.]

Jenks and Rich, JJ., dissenting.

Appeal from Trial Term, Richmond County.

Action by Donate Citrone against the O'Rourke Engineering Construction Company.  From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals.  Affirmed.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

Theodore H. Lord, for appellant.

Thomas J. O'Neill, for respondent.

GAYNOR, J.  The plaintiff was set to work in a trench.  He reported that the place was unsafe from stones above in the side of the trench that might fall on him.  The trench was sheathed and braced up on each side, but not all the way to the top, and the stones were above the sheathing.  The foreman in charge of the work and who employed the plaintiff told him "to go to work and after dinner he would fix it."  This happened at about 8:30 o'clock in the forenoon.  The plaintiff went to work, induced by the promise, and the stones fell on him at 10:30 o'clock.

The master is of course always free to make an agreement with the servant relieving him permanently or for only a limited time of the risk of being hurt in his work, and thereby assuming it himself, whether such risk be inherent or from a defective condition of working place or appliance.  It is upon this freedom of contract that the assumption of risk by the master always rests.  Dowd v. N. Y., O. & W. R. Co., 170 N. Y. 459, 63 N. E. 541.  The question in a given case therefore is simply whether such an agreement express or implied was made.  It is now settled in this state by the recent case of Rice v. Eureka Paper Co., 174 N. Y. 385, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585, that a mere promise by the master to the servant to repair a dangerous defect reported to him by the latter, made to induce and which does induce the servant to continue at work, amounts in law to an agreement relieving the servant from the risk and of assumption thereof by the master for the period during which the agreement continues.  In the present case there is more in express words, viz., a promise to repair coupled with a request to continue work, and that there was enough to constitute such an agreement as matter of law is therefore

not open to dispute. The rule laid down in Laning v. H. Y. C. R. Co., 49 N. Y. 521, 10 Am. Rep. 417, and so long followed by the trial judges, has been superseded by the Rice Case. The master's inducing promise to repair, from being only a fact to be considered by the jury on the question of fact whether the servant assumed the risk of the defect (or was guilty of contributory negligence, as it is otherwise expressed), by continuing at work, as was decided in the Laning Case and in such other leading cases as Counsell v. Hall, 145 Mass. 470, 14 N. E. 530, has evolved in this state into a contract relieving the servant of the risk and of assumption thereof by the master as matter of law.

The contention is, however, that although an agreement of assumption of risk was made by the master, it did not begin to run until after dinner—that it did not cover the period between the making of it and dinner time. I do not see how this can prevail. The very contrary seems to me inherent in the words and purpose of the agreement, viz., the agreement was intended to cover the period during which the servant was to be induced to work by it, viz., from the time of making it un til dinner time. The purpose of the master was to induce the servant to resume work until dinner time, and he effected it by promising to repair the defect after dinner. The servant was not to be subjected to the risk after dinner, for it was then to be removed, and therefore the agreement could not be intended to cover that time, but, on the contrary, the time that the servant was to undergo the risk.

In the Rice Case the promise was made at the close on Saturday to do the repairs "the forepart of next week," which the Court of Appeals construed to mean during the fore-half of next week, i. e., not later than Wednesday; and it was held as matter of law that the agreement went into effect at once and that the defendant assumed the risk for Monday, Tuesday and Wednesday, and was liable for the plaintiff's hurt on Wednesday. If the promise be to do the repairs presently, or within no fixed time, the agreement subsists for a reasonable time only, but if the parties fix the period of its duration, it of course applies during that period.

If the master had said, "Go to work and I will fix it," the agreement would concededly have begun to run immediately, and would have meant that within a reasonable time the danger would be removed, but because the master said, "Go to work and after dinner I will fix it," it is claimed that the agreement did not begin to run at all; the agreement was not to begin to run until dinner time, and then only if the defendant failed to keep its promise. In the Rice Case the master said, in substance, "Go to work and I will fix it some time in the fore-half of next week" (i. e. not later than on Wednesday), and the agreement was held to begin to run immediately and continue until Thursday. It was not that the danger would be removed immediately, but at some time within three days. Why then did it begin to run immediately if the present one did not? Why in the period intermediate the making of the agreement and the time limited for the making of the repairs (Wednesday) did the agreement apply there if not here? Can a single reason be assigned? The law is not complex but simple and consistent, and it is always a misfortune to make it appear otherwise.

We need in this instance to make a simple working rule for trial judges and jurors.

The learned trial judge charged the jury that unless the defendant made the promise to repair they should render a verdict for the defendant; but that 'if the promise was made the defendant assumed the risk and the plaintiff was relieved of it "until the expiration of a reasonable time after the promise had been made"; and he left it to the jury to say whether such reasonable time had elapsed before the accident happened, in which case he instructed them the plaintiff had assumed the risk and the defendant was relieved of it, and the verdict should be for the defendant. This was an error prejudicial to the plaintiff, and not to the defendant, although the defendant excepted to it, for there was no question in the case of a reasonable time for the performance of the promise. On the contrary, the parties fixed the time by agreement. The jury should therefore have been charged as matter of law that the defendant was liable if the promise was made. When such a promise is made to do the repairs presently, or without fixing a time, the cases hold that it continues only for a reasonable time, after which (it not being kept) the risk goes back to the servant if he continues at work. The learned trial judge evidently had this rule in mind in charging the jury, and did not perceive for the moment that it had nothing to do with cases where the time is fixed by the agreement.

The judgment should be affirmed.

Judgment and order affirmed, with costs.

HOOKER and MILLER, JJ., concur.

JENKS, J. I dissent. This action is for negligence. The plaintiff was ordered by his master to go to the bottom of a trench and to break up stones which lay there, released by blasting. While at work therein he was injured, at 10:30 a. m., by the fall of a stone out of the side of the trench. The trench was 13 or 14 feet deep and about 6½ or 7 feet wide. It was held at intervals of 15 feet by braces 5 or 6 feet above the bottom. The loose stone was above the braces. The court dealt with the action as one at common law, and submitted it to the jury upon the question of a safe place to work. It further limited that single question of fact by an instruction that there was no liability unless the jury found that the master had made a promise to safeguard the sides of the trench, testified to by the plaintiff and denied by the defendant. It then charged the jury that, if they found the promise, the question of liability depended upon the jury's determination whether the accident happened before or after the lapse of a reasonable time within which the promise could have been fulfilled. The exception taken is sufficient to raise the question as to the propriety of such instruction. In Rice v. Eureka Paper Co., 174 N. Y. 385, 397, 66 N. E. 979, 983 (62 L. R. A. 611, 95 Am. St. Rep. 585), the court, per Werner, J., say:

"From the foregoing review of the authorities it is clear that, although the courts of this state have not hitherto had occasion to definitely adopt the rure under which a servant may be relieved from an assumed risk of his

employment by the master's promise to remove the danger which creates the risk, the rule is so generally recognized as a part of the jurisprudence of this country, and is so strongly supported by reason and justice, as to justify its adoption by this court."

The effect of such a promise is well stated by Holmes, J., in Counsell v. Hall, 145 Mass. 470, 14 N. E. 531:

"If machinery upon which a servant is employed has become dangerous, and the servant has complained of it, and has been promised that it shall be repaired, but is injured before the defect is remedied, and while he is reasonably expecting the promise to be performed, the promise is a circumstance to be considered by the jury in determining whether he has assumed the risk in the meantime, and whether he was using due care in working when he knew there was danger. But no case, we believe, has gone the length of deciding that the promise entitles the servant to recover as matter of law, which was the effect of the ruling asked."

See, too, District Columbia v. McElligott, 117 U. S. 632, 6 Sup. Ct. 884, 29 L. Ed. 946 et seq.

The record in this case does not establish that the plaintiff had a right to assume that the repairs promised had been made, for he well understood the character of the repairs, and it is morally impossible that entering upon a trench dug 13 or 14 feet deep to work therein, with full knowledge that there were then no braces to support the stone, and remaining therein, he could have supposed that braces had been put in directly above his head during the time he was at work therein. And, on the other hand, there was no promise save the qualified one that the repairs would be made after dinner. The effect of a qualified promise was noticed, but expressly not decided, in Rice v. Eureka Paper Co., 174 N. Y. 397, 66 N. E. 983, 62 L. R. A. 611, 95 Am. St. Rep. 585, nor can I discover that it has ever been determined by the Court of Appeals. I have said that the promise was qualified. This promise was not general, but qualified. The plaintiff, referring to the foreman, testifies: "I told him that that was a very bad spot to work, that the stones were loose, and he told me after dinner they were going to put the braces there." As the witness testifies that this conversation was held in the morning, there is on ambiguity as to the application of the words "after dinner." The witness meant that the foreman told him that they were going to put braces there after dinner. The court so construed the language, and told the jury that the alleged promise was "that he would brace it after dinner." The view of the court was that upon the facts the servant was defeated by the assumed risk, unless it was shifted to the master by the master's promise, and whether it was thus shifted depended upon the determination by the jury whether at 10 a. m. the reasonable period in which the promise could have been fulfilled was still running. If this is so, then a promisor to repair at a definite period may be held upon that promise, if from the time it was made a reasonable time for performance had elapsed and he had not performed, even though the period definitely named by him for performance had not arrived. I fail to see that such a proposition is the law. The fact of the risk might affect the servant's right as well as the master's liability. It might defeat the servant or help to mulct the master as each acted in view of it. If the servant enter upon the work with full knowledge of it, then, on the

doctrine of an implied contract, the servant assumes it.    Dowd v. N. Y., O. & W. Ry. Co., 170 N. Y. 459, 63 N. E. 541.    If he enter upon it induced by the promise of the master to remove it by repairs or the like, the servant may be relieved from the penalty incident to such assumption.    Rice v. Eureka Paper Co., 174 N. Y. at page 397, 66 N. E. at page 983, 62 L. R. A. 611, 95 Am. St. Rep. 585.    The liability of the master, despite the conduct of the servant, depends upon his express assumption of the risk.    If the master by his promise elect to assume it absolutely, that is one thing; but if the master qualify his promise, and the servant choose to accept it, I do not think that the servant can assert that the assumption of the master is absolute.    I fail to see a sufficient reason why the law, in disregard of the master's express qualification of his promise, should declare that the promise was general, and, in effect, declare unto the master: "You cannot make a promise to repair at a future period, for even if you do, and it is acted upon by the servant, nevertheless you must be held upon a general promise, and your assumption of the risk perforce of the promise is absolute until a reasonable time for its fulfillment from the time it is made shall have elapsed."    In a case where the peril is still known by the servant to exist, the theory that the promise shifts the assumption of risk is based upon the proposition that the servant enters into the peril on the assurance that it is to be ended by the act of the master.    If he enter it fully understanding that the period for performance fixed by the qualified promise has not begun, he has no reason to expect that the master will repair at a different period, either forthwith or presently, or within a reasonable time after the promise was made.    Labatt on Master and Servant (page 1195) says:

"Ordinarily the protection afforded by the promise of a master to repair defective machinery is not postponed until after the arrival of the time at which the promise is to be performed, but commences as soon as it is made. But if the master has merely made a qualified promise to remedy a defect after the expiration of a certain period, and not till then, the servant cannot recover for an injury received before the end of that period."

In Standard Oil Co. v. Helmick, 148 Ind. 457, 47 N. E. 14, the promise was to repair as "soon as the order then being filled was turned out," and the court said:

"But here the promise was not to repair generally, which would imply that it was to be done within a reasonable time.    The promise was to repair as soon as the present order was run out.    How long that would take, whether a week, thirty days, six months, or a year after the promise was made, is not found in the special verdict.    For aught that appears it may have required thirty days, or six months to run out that order.    At the end of that time the promise was to repair.    That being so, there could have been no inducement influencing the appellee to remain in the service and work with the alleged dangerous machine during that thirty days or six months, expecting the danger to be obviated, as is the case where the promise is to repair generally, implying it is to be done within a reasonable time.    In Indianapolis, etc., R. W. Co. v. Watson, 114 Ind. 20, 30, 14 N. E. 721, 726, 15 N. E. 824, 5 Am. St. Rep. 578, it was said: 'Now, if there had been a promise to furnish a lantern at the end of the 30 days, that would not relieve plaintiff from the risk incurred by working without a lantern for that 30 days, when, as he says, he had no expectation that a lantern would be furnished.'    So, in the case before us, there could be no expectation on the part of the appellee that any repairs were to be made during the time required to run out the order on which appellee was at work at the time the promise was made.    And, hence, *during that time,*

*whatever its length was* (italics are mine), the promise would not relieve plaintiff from the risk incurred by working without such repairs. Therefore. if the plaintiff's injury occurred during the time required to run out that order, and before it was finished, the promise to repair did not relieve him from the risk incurred in working without the repairs. In other words, it left him as to risks from known dangers within that time as if no agreement to repair had been made, and that is that he assumed such risks."

See, too, McFarlan Carriage Co. v. Potter (Ind. Sup.) 52 N. E. 209; Southern Pacific Co. v. Leash, 2 Tex. Civ. App. 68, 21 S. W. 563.

In fine, it seems to me that, upon a promise to repair at a definite fixed period, the servant has no right to assume the risk until the arrival of that period, and then insist that the risk is that of the master before the arrival of that period. In the views of the court as explained to the jury the defendant was only responsible in case it had made the promise to repair, and if it had made the promise the jury were instructed as if the promise were general. Therefore the jury as instructed could have found ·(indeed the only evidence was that way) that, notwithstanding the promise was only to repair at a fixed period, the defendant was liable for the accident that occurred before the period came.

In the learned and elaborate opinion of Werner, J., in Rice v. Eureka Paper Co., supra, the two Indiana cases, supra, are cited at length. In Rice's Case, the promise was held to absolve the servant. It was made on Saturday night, at the close of the working week, and was, in effect, "that the repairs would be made in the forepart of the following week, when the mill was to be shut down for other repairs." The court say that the plaintiff was an ordinary laborer, presumably not in the confidence of his employer, so far as to know when the mill would be shut down, and that under such conditions he may have gone to work on Monday morning, with the expectation that the mill might be shut down at any moment without further notice; that therefore the court could not say as a matter of law that this would have been an unreasonable view; and that therefore, as the promise made was capable of a construction that it might be fulfilled within a reasonable time, the plaintiff might be absolved. Between that case and this one there is no analogy of facts. The facts before us are extremely plain. The servant saw the loosened stone, he understood its menace to his proposed place of work. He called it to the foreman's attention in the morning. Both knew that a brace or braces would prevent its fall, the master promised to brace it "after dinner," and the servant thereupon began work and was injured by the falling stone at 10:30 a. m. The risk was apparent and understood. The remedy was plain and also understood. The qualification was "after dinner." The servant knew perfectly well, for the trench was only 13 or 14 feet deep, if since the promise any bracing above his head was doing or any work of that kind had been done. The promise does not present a qualification in words so ambiguous or so general as to admit a supposition by any reasonable man that the prescribed period "after dinner" began in the early morning, and that therefore the master was in default at 10 a. m., or to assume that a promise to act "after dinner" meant to act at once, so that he had an expectation that, if the promise had been fulfilled, the bracing might have been done at that morning hour. The

measure for the master is often moderated by sympathy for the servant. Legislatures and courts often are benign in this human age to strive to assure an equality in their relationship that otherwise does not exist from the very nature of the relation, to say nothing of the opportunities or the drawbacks of one or the other man that disturb equality. But we go far, and too far, in the road of collectivism, in holding that a servant, who deliberately disregards common prudence to encounter injury in service, may nevertheless hold the master liable for the consequences, if the master has promised that at some future specified time not yet at hand he will make the service safe. In other words, that the master cannot make a promise to repair qualified as to a future period with performance thus limited.

The learned counsel for the appellant insists that, inasmuch as the negligent act happened during the course of work, the rule of Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905, of Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021, and of like cases, must apply. But the plaintiff was not at any work upon the trench incidental to it. He was breaking up stones that had been taken out of the earth and from the trench. True, he was in the trench, but that was the place where he did work, which in itself might have been done at any place where the free stones could be taken. And there is no evidence that at the time there was any work doing by any one upon the trench. On the contrary, the testimony that "it had been blasted where Citrone was working," and that "they sometimes blasted at night in order to have the material ready on hand in the morning," justified the inference that when the plaintiff was put to work in this place the stones or earth did not fall in the course of any construction or destruction connected with the trench itself. It does not appear that at the time, or even on the day of the accident, in the words of Vann, J., in Simone v. Kirk, 173 N. Y. at page 16, 65 N. E. at page 742, the servant (or any fellow servant) "was engaged in the work of making a safe place for himself and his fellow workmen."

There is another principle that has been recognized in many decisions. Mr. Bailey, in his work on Personal Injuries, says (section 3117):

"Where the defect is so glaring that with the utmost care and skill the danger is still imminent, so that none but a reckless man would incur it, then if the servant will engage in the hazardous undertaking he must be considered as doing so at his peril, notwithstanding that he may have assurances from the master that the defect causing the danger will be remedied."

The principle is ably discussed by Elliott, J., in Indianapolis & St. Louis R. R. Co. v. Watson, 114 Ind. 20, 14 N. E. 721, 15 N. E. 824, 5 Am. St. Rep. 578. In Hough v. Railway Co., 100 U. S. at page 225, 25 L. Ed. at page 618, it is said:

"We may add that it was for the jury to say whether the defect in the cowcatcher or pilot was such that none but a reckless engineer, utterly careless of his safety, would have used the engine without it being removed. If, under all the circumstances, and in view of the promises to remedy the defect, the engineer was not wanting in due care in continuing to use the engine, then the company will not be excused for the omission to supply proper machinery, upon the ground of contributory negligence."

See, too, Hannigan v. Smith, 28 App. Div. 176, 50 N. Y. Supp. 845; McCarthy v. Washburn, 42 App. Div. 252, 58 N. Y. Supp. 1125.

There is another feature in the case which, in view of the new trial, may be commented upon. The plaintiff testified not only that the foreman made a promise to repair, but that he also said the stones would not move—that they would not fall. The servant could rightfully assume that the master had made the place reasonably safe. Kranz v. L. I. R. R. Co., 123 N. Y. 1, 25 N. E. 206, 20 Am. St. Rep. 716. Nevertheless, if the danger was so apparent to the servant as to be as well known to him as to the master, he could not, even with the duty of the master in his mind, rely upon this assurance of safety that was contradicted by the physical fact fully apparent to him. Graves v. Brewer, 4 App. Div. 327, 38 N. Y. Supp. 566. I do not pretend to say that, upon the facts elicited, the learned court erred in passing upon this question and withholding it from the jury.

I think the judgment and order should be reversed and a new trial granted, costs to abide the event.

RICH, J., concurs.