## Cincinnati, New Orleans & Texas Pacific Railway Company v. Clarke.

(Decided April 26, 1916.)

### Appeal from Boyle Circuit Court.

1. Appeal and Error—What Not Reversible. Error.—The error of the trial court in overruling a motion before answer to require a plaintiff to elect whether he will proceed under the Federal Employers' Liability Act or the common law of the state will be treated as any other error of the trial court, and is not a reversible error, if it was not prejudicial to the substantial rights of the defendant.

2. Master and Servant—Interstate Commerce—Negligence.—Where an employe was engaged in his regular duty of throwing the ashes from an ashpit, which was a permanent structure under the track of a carrier, constructed for and used by the carrier in

cleaning the ashes and cinders from its engines, which were engaged in interstate commerce, and while in such employment, and while throwing out ashes which were received into the pit from interstate engines, the employe was injured by the negligence of other employes of the carrier, in running an engine over him, he was employed in aid and furtherance of interstate commerce, and his cause of action was under the Federal Employers' Liability Act.

3. Trial—Jury—Assent of Required Number—Instructions.—In an action under the Federal Employers' Liability Act, it is not error to refuse an instruction to the effect that three-fourths of the jury could not make a verdict.

4. Appeal and Error—Reversal—Evidence.—A verdict will not be disturbed because of a claim that it is not sustained by the weight of the evidence, unless it is clearly and palpably against the weight of the evidence.

CHARLES H. RODES, NELSON, D. RODES and JOHN GALVIN for appellant.

CHENAULT HUGUELY, ROBERT HARDING, E. V. PUYEAR and C. C. BAGBY for appellee.

OPINION OF THE COURT BY JUDGE HURT.—Affirming.

The appellee, Phillip Clarke, was an employee of the appellant, Cincinnati, New Orleans & Texas Pacific Railway Company, and engaged in working for appellant in its yards at Lexington, Kentucky. In the yards of appellant at that place, among other tracks which it had, was a side or switch track, which extended over an ash pit, wherein the ashes from the engines were dumped when it was necessary to clean out the ashes from them. The track was called the "pit" track. At its north end it led off from another switch track, at the switch which leads to the turntable, and at its south end the "pit" track connects with another side track. The pit is about forty feet in length, and the floor of it is laid with brick. The "pit" track passes over the pit from the north to the south, longitudinally, and is supported throughout the length of the pit by iron pillars, which rest upon the floor. The rails which compose the track are two feet and seven inches above the floor of the pit and the side walls of the pit are about one and a half feet from the rails on the east and west sides of the track, respectively. When it was desired to remove the ashes which had accumulated in an engine, the engine was brought on to the "pit" track and stopped over the pit, when two employees of

the appellant cleaned the ashes from the engine into the pit. After the engine was removed, one of the employees got into the pit and shoveled the ashes out upon a platform and from the platform threw them into a car on a nearby track, in which the ashes were hauled away. All of the engines used upon the road of appellant, those engaged in transporting interstate as well as intrastate freights and passengers, including the switch engine in the yards, were cleaned of their ashes into the pit. The appellant was engaged in both interstate and intrastate commerce. The appellee was employed as an assistant to the hostler in the yards, who was on duty at night. The hostler has two assistants, one of whom was called the "fire knocker" and the other the "pan puller." Among the other regular duties of the "fire knocker," was when an engine was upon the pit to be cleaned of its ashes, to assist in so doing by knocking the ashes down to where they could be reached by the "pan puller." Among the other regular duties of the "pan puller," it was his duty to get into the pit under the engine and pull the ashes out of the engine down into the pit by the use of an instrument for that purpose, and when there was no engine over the pit to get into the pit and clean it of ashes, as has been above detailed. The appellee held the position and performed the duties of the "pan puller." During each night and about the midnight hour, the crew which operated the switch engine in the yard of appellant would bring it upon the "pit" track and leave it on the track, about forty or fifty feet to the south of the pit, when they would go and take something to eat. While the switch crew was absent the hostler would take charge of the switch engine and place it over the pit, and after it was cleaned of its ashes, would replenish its water and coal supply and then place it at the point where the switch crew had left it, when the switch crew would again take charge of it. On the night of September 7th, 1913, one of appellant's freight trains came from Cincinnati, O., into the Lexington yard, and another from Oakdale, Tennessee, and the engine which moved each of these trains was cleaned of its ashes at the pit by the appellee and the "fire knocker." An engine, which brought a train over the Louisville Southern from Louisville, Kentucky, was also cleaned and the ashes from it dropped into the pit. About midnight the appellee was assisting the hostler, who was his superior in authority and whose

directions it was his duty to obey in turning an engine upon the turntable, and when that work was finished, the hostler directed appellee to proceed and clean the pit of the ashes in it, which was one of his regular duties. He claims that he got into the pit between the rails of the track and set his lantern down near him, and proceeded to throw out the ashes, and in so doing one of his legs was pressed against the rails of the track, with his face toward the south end of the pit, and while at this work he observed the rail against which his leg was pressing, to move and looking around to discover the cause, for the first time became aware that the switch engine was backing over the ''pit'' track and was immediately upon him, and that in order to escape it, he was obliged to instantly and hurriedly attempt to get out of the pit, over the east rail of the track, and that in so doing his left foot was caught upon the rail by the wheel of the engine and was so badly crushed that three of his toes had to be amputated, and the bones between the large toe and the instep were crushed. Up to the time of the trial, which was nearly one and a half years after the injury, he had been unable to perform any kind of manual labor. A suppurating sore was in the bottom of his foot, and the testimony of the surgeon was to the effect, that a further amputation of about one-half of the injured foot would have to be effected, before it could be cured. After the injury appellee remained in the hospital for several months before he was discharged from it. Appellee, further, testified that he saw no light upon the engine, and if any warning of its approach was given by a whistle or ringing of the bell, he did not hear it.

Appellee instituted this suit for the recovery of damages for his injuries, and alleged that his injury was caused by the negligence of the servants of appellant, and that appellant was at the time engaged in interstate as well as intrastate commerce, and that employment in which he was engaged at the time of his injury was a work in furtherance of both interstate and intrastate commerce.

The appellant, before answering, moved the court to require appellee to elect whether he would rely upon the federal statute, known as the Federal Employers' Liaability Act, for redress of his grievances, or whether he would rely for recovery upon the common law of the State. The court overruled the motion to which appellant excepted.

The appellant then filed an answer, in which it traversed the allegations of the petition, and denied that either appellant or appellee were engaged in interstate commerce at the time of the injury; and in addition plead assumed risk and contributory negligence as a defense to the action. The affirmative allegations of the answer were controverted by a reply.

At the conclusion of the evidence for appellee and at the conclusion of all the evidence the appellant moved the court to direct the jury to find a verdict for it, which motions were both overruled and appellant excepted.

At this point in the proceedings the appellant renewed its motion to require appellee to make an election as to whether he would rely upon the federal law or the common law of the State. The court sustained the motion and required the appellee to make an election, when it elected to rely upon the Federal Act. The appellee objected to being required to make an election and excepted to the ruling of the court.

The jury returned a verdict for appellee, fixing the amount of his recovery at the sum of $3,000.00, and a judgment was rendered in accordance therewith.

The appellant's motion for a new trial being overruled, it appealed and now relies for a reversal:

First: Because the court overruled its motion, before it answered, to require appellee to elect whether he would proceed under the Federal Act or the common law.

Second: Because the court overruled its motion, at the conclusion of appellee's evidence and at the conclusion of all the evidence, to direct the jury peremptorily to find a verdict for it.

Third: Because the court erred in giving to the jury instruction "C."

Fourth: Because the court refused to give to the jury instructions 1, 2, 3, 4 and 5, offered by it.

Fifth: Because the verdict is flagrantly against the evidence, and not sustained by sufficient evidence.

The grounds relied upon for reversal will be considered in their order.

The court should have sustained appellant's motion to require appellee to elect whether he would proceed under the Federal Employers' Liability Act or the common law. If it is a case wherein relief may be properly had under the Federal Act, it supersedes the common law of the State, and any recovery for appellee must necessarily be

based upon the Federal Act. S. C. & C. Ry. Co. v. Finan's Admr., 153 Ky. 340; L. & N. R. R. Co. v. Strange, 156 Ky. 439; L. & N. R. R. Co. v. Moore, 156 Ky. 710; Thompson v. C., N. O. & T. P. Ry. Co., 165 Ky. 256. It does not, however, appear how the action of the court in overruling appellant's motion to make an election in this case, at the time the motion was overruled, could have or did result in any prejudice to the appellant's substantial rights under the federal statute. The appellant at no time interposed a demurrer to the petition, but traversed the allegations of negligence on the part of appellant and its servants; denied that the appellant or appellee were at the time of the injury engaged in interstate commerce, and, also, plead that the injury was caused by a risk assumed by the appellee, and that it was caused by his contributory negligence. All the evidence offered by appellant touching these defenses was fully heard. The error in overruling the motion at the time it was overruled should be treated as any other error made by the trial court, and if the error does not result prejudicially to the substantial rights of the appellant, it is not a reversible error. L. & N. R. R. Co. v. Moore, *supra.*

The second ground relied upon for reversal, as appears from appellant's brief, is based upon the contention that the proof failed to show that at the time of the injury the appellant was engaged in interstate commerce, and that appellee when injured was employed in interstate commerce. After appellee made his election to rely upon and proceed under the federal law, the appellant offered instructions 2 and 5, which were refused. Instruction 2 was a peremptory instruction to find for appellant, because appellee at the time of his injury was not an employee employed in interstate commerce. Instruction 5 was an instruction which directed the jury to find a verdict for appellant, because the appellant, at the time of appellee's injury, was not engaged in interstate commerce. These offered instructions and the motions for a direct verdict all involve the same question and will be considered together.

There is no contradiction in the evidence in regard to the use to which the ash pit was put. It was situated under one of the tracks of appellant, and was an instrumentality designed, constructed and used by the carrier for the purpose of ridding the engines used in its operations of the ashes produced by the materials used in the

engines to make the power, which was necessary to propel them. It was daily and at night used for that purpose by its engines, which were engaged in interstate commerce. The pit was a useful and necessary instrumentality in the operation of its engines engaged in interstate commerce. The ashes must necessarily be taken from the engines and when dropped into the pit, the ashes must be thrown from the pit to keep it in condition and repair to do the service for which it was used and designed. If appellee when injured had been employed in repairing the track of a railroad, which was used for hauling cars containing freight from one state into another, no one would question the fact that he was then engaged in an act in aid and furtherance of interstate commerce, and that his case would properly be one under the provisions of the federal act. The pit in question was a permanent structure and part of the equipment of appellant for the transportation of interstate commerce, just as the bridge was in the much quoted case of Pederson v. D. L. & W. R. R. Co., 229 U. S. 146. In that case Pederson was proceeding with bolts to be used in repairing the bridge which was used for both interstate and intrastate trains, and the Supreme Court held that his employment was one within the provisions of the Federal Employers' Liability Act, and said:

"Tracks and bridges are as indispensable to interstate commerce by railroads as are engines and cars; and sound economic reasons unite with settled rules of law that these instrumentalities be kept in repair. The security and efficiency of commerce depend in large measure upon this being done."

It was held by this court in L. & N. R. R. Co. v. Strange's Admx., 156 Ky. 448, that "in determining whether or not the federal or state law is applicable to an action of this character the test is this: Were the injuries of the employee sustained while the company was engaged and the employee was employed in interstate commerce? If so, the federal statute applies; if not, the state law is applicable." Applying this rule to the facts of the Pederson case, it results that the maintenance of the bridge over which the railroad company ran interstate trains was, on the part of the company, being engaged in interstate commerce; and the going toward the bridge with bolts with the intention of repairing it was, on the part of the employee, an employment in interstate

commerce. In Thompson v. C., N. O. & T. P. Ry. Co., 165 Ky. 256, the injured person was employed in making an addition to a machine shop, in which engines in interstate commerce were repaired. The addition had been so far carried to completion, that tracks had been laid into it, and engines used in interstate commerce were stored there for repairs. It was held that the case was one within the provisions of the federal statute, which was a holding that the maintenance of such a shop was an engagement in interstate commerce on the part of the company, and the act of Thompson in assisting to complete the addition to the shop was an employment in interstate commerce upon his part. In I. C. R. R. Co. v. Behrens, 223 U. S. 473, the Supreme Court referring to the Federal Employers' Liability Act, said:

"It is clear that Congress intended to confine its action to injuries occurring when the particular service in which the employee is engaged is a part of interstate commerce."

In the case at bar, the ash pit was a necessity for the "expedition and efficiency of the commerce," as mentioned in the Pederson case; it was constructed and used for the purpose of cleaning the ashes and cinders from engines used in interstate commerce; when appellee received his injuries, according to his evidence, he was employed in his customary work of throwing the ashes from it so as to preserve its efficiency for use, for the purpose of taking the ashes from the interstate and intrastate engines, and the ashes which he was then throwing out were deposited in the pit from engines then in use by appellant in interstate commerce. His work was intimately connected with the transportation of interstate shipments of freights and other interstate commerce, and necessary for its efficient and expeditious transportation, and so closely connected with it as to be a part of it. Hence, at the time of his injury, the appellant was employed in interstate commerce. Hence, the court was not in error in overruling appellant's motion for a direct verdict in its favor, and in denying instructions 2 and 5 offered by appellant. St. L. S. F. & T. Ry. v. Seale, 229 U. S. 156; Shanks v. Delaware, L. & W. R. Co., 239 U. S. 556; North Carolina R. Co. v. Zachary, 232 U. S. 248; Pedos & Northern Texas Ry. Co. v. Rosenbloom, 36 Supt. Let. Rep. 390; Bruce Shanks v. Delaware, Lacka-

wanna & Western Railroad Co., 239 U. S. 556, and cases there cited.

Instruction 1, offered by appellant and refused, was to the effect, that three-fourths of the jury could not make a verdict, but all of the jurors must concur and make the verdict. This was properly refused, as has heretofore been held by this court in L. & N. R. R. Co. v. Winkler's Admr., 162 Ky. 848; and C. & O. Ry. Co. v. Kelley's Admr., 161 Ky. 655; C. & O. Ry. Co. v. Shaw, 168 Ky. 537; L. & N. R. R. Co. v. Johnson's Admr., 161 Ky. 824; L. & N. R. R. Co. v. Stewart's Admr., 163 Ky. 827

Instruction 3, offered by appellant and refused, directed the jury that if appellee was not in the pit on the occasion and at the time of his injury, it should find for appellant. The giving of this instruction was unnecessary, as instructions A and B given by the court restricted appellee's right of recovery to injuries received by him while employed in the pit, and it does not appear that the jury could have understood that it had the right to find for appellant on account of an injury received elsewhere.

Instruction 4 offered by appellant was properly refused. It directed the jury that if the engine bell was being rung as the engine approached and entered upon the ash pit, and that at least one employee was on the engine maintaining a lookout down the pit track, to find for appellant. This instruction did not provide for the ringing of the bell for a sufficient time before the approach of the engine to allow appellee opportunity to get out of its way, and neither did it require the lookout, if when he saw appellee in peril in the pit in time to have saved him from harm, that it was the duty of the one maintaining the lookout to take action to do so. Instruction B given by the court set out the relative duties of the appellant and appellee as to the ringing of the bell and maintaining the lookout.

The appellant did not object to any of the instructions given by the court, except instruction "C," which is the one in which the jury is advised as to the measure of the damages, in the event of a finding for appellee. The appellant in its brief suggests no reason why this instruction is erroneous, and we observe no substantial defect in it.

The appellant insists that the verdict of the jury is flagrantly against the weight of the evidence, and for that reason the judgment ought to be reversed. The evidence could not well be more contradictory than it is,

and in numerical number of witnesses, the appellant has much the advantage. It is the peculiar province of the jury to determine what the facts are and it is peculiarly qualified for such a duty. It meets the witnesses face to face and has opportunity to judge of their intelligence and apparent probity, and the circumstances which surround them and under which they give in their testimony. The evidence of the appellee, and some circumstances proven by the witnesses for appellant, make sufficient evidence to sustain the verdict, if the jury believed him, corroborated by the circumstances, and it evidently did believe his version of the transaction from the verdict which it returned. There is nothing to indicate that the jurors were actuated by any passion or prejudice, since the amount of the finding is not excessive. The rule which has long been established by the decisions of this court is, that a verdict will not be disturbed because of a claim that it is not sustained by the evidence, unless it is clearly and palpably against the weight of the evidence.

The judgment is therefore affirmed.