HOWARD V. WILLS, RESPONDENT, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, A CORPORATION, APPELLANT.—205 S. W. (2d) 942.

St. Louis Court of Appeals.   Opinion filed November 18, 1947.

*Warner Fuller* and *Arnot L. Sheppard* for appellant.

1146

*Al F. Gerritzen* for respondent.

ANDERSON, J.—Respondent Howard V. Wills brought this action to recover compensation under the Workmen's Compensation Act for injuries sustained by him on February 26, 1945, while employed by appellant Terminal Railroad Association of St. Louis. Appellant challenges the jurisdiction of the Missouri Workmen's Compensation

Commission on the ground that respondent's rights were governed exclusively by the Federal Employers' Liability Act, rather than by the Missouri Workmen's Compensation Act. A hearing was had before a Referee of the Commission, which resulted in a finding in respondent's favor in the sum of $2,000. The Full Commission affirmed. Thereupon, appellant appealed to the Circuit Court of the City of St. Louis, where the award in respondent's favor was affirmed.

On this appeal the sole issue is whether the Missouri Workmen's Compensation Commission had jurisdiction of the cause, or whether respondent's rights were governed by the Federal Employers' Liability Act.

Respondent was employed by appellant as a sheet metal worker. On the day he received his injury, he was helping to install a pipe ventilator through the roof of a building used for forging iron parts, which iron parts were used in the repair of boxcars moving in interstate commerce. He fell from the roof of the building to the concrete platform in front of the shop, and sustained a comminuted fracture of the distel end of the left radius, and a compression fracture of the twelfth thoracic vertebra.

The forge shop was a new building, and work therein had been in progress for eight or ten days prior to the date of respondent's injury. As originally constructed, the building had a large ventilator on the roof, but apparently this did not remove all the smoke and fumes. The pipe ventilator which plaintiff was helping to install, at the time he received his injury, was to be connected to a canopy located directly over the forge, and was intended to eliminate smoke and fumes. It was a health measure, and was installed for the convenience and comfort of the blacksmiths working inside the shop.

From January 16, 1945, to and including February 16, 1945, with the exception of January 21, January 28, February 5, and February 11, respondent worked at appellant's Brooklyn shop as a sheet metal worker. At this Brooklyn shop, there is a roundhouse where appellant's locomotives are kept and repaired. Respondent worked all over the Terminal properties, doing different kinds of sheet metal work. He worked on the roof of the Union Station in St. Louis, which roof covers the train shed in which passenger trains enter Union Station. The forge shop on which respondent was working when he fell is used to repair metal parts of freight cars, which freight cars are placed for repairs on a rip track about 30 feet from the forge shop. These cars are foreign cars, moving out of St. Louis in every direction, and belong to other railroads. Respondent did no work on these cars or on any of appellant's tracks.

At the hearing before the Referee, appellant's counsel propounded the following question to Joseph Keiling, respondent's foreman:

"Q. What sort of work did your gang do other times than on this particular day?"

An objection to this question was sustained by the Referee on the theory that the jurisdiction of the Commission to make an award under the compensation act was to be determined exclusively by the nature of the work done by claimant on the day of the injury.

Counsel for appellant then made the following offer of proof:

"MR. SHEPPARD: Then I offer to show by this witness, if permitted to testify, that claimant, that the witness and his gang of sheet metal workers, worked at various places on the property of the Terminal Railroad Association of St. Louis, including the Brooklyn and Harlem repair shops, as testified by claimant yesterday, and that in the Brooklyn locomotive shops engines and locomotives engaged in interstate commerce were repaired. That the roof and other facilities of the Union Station, where claimant worked at times, were used for the purpose of handling interstate passenger trains in an out of the Union Station. That witness' crew, including the claimant herein, worked also on yard offices, yard buildings on the Terminal's facilities, both in Missouri and also in Illinois, at places where interstate commerce was being moved by the Terminal Railroad of St. Louis at all times."

The Referee held, and his holding was approved by the Full Commission, that because the installation of the ventilator was unfinished, and was in the process of construction at the time respondent was injured, respondent was not covered by the Federal Act, and that his work was too remotely connected with interstate commerce to bring him within said act.

Appellant contends that respondent's rights, if any, must be determined under the Federal Act, 45 U. S. C. A. Sec. 51; while respondent contends that his rights are not under the Federal Act, but under the Missouri Workmen's Compensation Act, because the work he was doing at the time did not directly or closely and substantially affect interstate commerce.

The issue between the parties must be determined in the light of the 1939 Amendment to Section 51, 45 U. S. C. A. Sec. 51,.c. 685, 53 Stats. at L. 1404. Said amendment reads as follows:

"Any employee of a carrier, any part of whose duties as such employee shall be the *furtherance of interstate* or foreign commerce; or shall, in *any way directly or closely and substantially,* affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." (Emphasis ours.)

The evidence in this case shows that within the forge shop in question workmen are regularly engaged in work necessary to the repair of freight cars employed in interstate commerce. Freight cars are a necessary part of interstate commerce, and such commerce cannot be properly or efficiently maintained unless those

freight cars are kept in proper repair. To keep them in proper repair, it is necessary for the carrier to maintain a repair shop or buildings where processes necessary to the repair of freight cars are carried on. These repair shops or buildings, because of the use to which they are put, become instrumentalities of interstate commerce, and the persons working therein are clearly engaged in the furtherance of interstate commerce, or in work affecting such commerce directly or closely and substantially. Truco v. Erie R. C., 353 Pa. 320, 45 A. (2d) 20; Shelton v. Thomson, 148 F. (2d) 1; Wright v. New York Cent. R. Co., 33 N. Y. S. 531, 263 App. Div. 461; Southern Pacific Co. v. Industrial Accident Com., Cal., 120 P. (2d) 880.

In Trucco v. Erie R. Co., 353 Pa. 320, 45 A. (2d) 20, claimant, a blacksmith's helper, was engaged in making "strap hangers" used as replacement parts for his employer's locomotives used in interstate commerce. It was held that claimant was engaged in the furtherance of interstate commerce, or in work affecting such commerce directly or closely and substantially, thus precluding a recovery under the state workmen's compensation act, the claimant's exclusive remedy being under the Federal Employers' Liability Act.

In Southern Pacific Co. v. Industrial Accident Com., Cal., 120 P. (2d) 880, it was held that a railroad car repairman who sustained an injury while repairing a combination truck and boom car, used to remove from railroad tracks obstructions and obstacles interfering with both intrastate and interstate business, was performing a duty in the furtherance of interstate commerce, and that his work directly, closely, and substantially affected such commerce.

In Shelton v. Thomson, C. C. A. Ill., 148 F. (2d) 1, plaintiff operated a crane in a storehouse of the Chicago and North Western Railway Company, the crane being used to lift wheels and other supplies which, in turn, were used in the repair of defendant's freight cars. He claimed that while so engaged he received a permanent injury from the continual inhalation of carbon monoxide gas from the crane's gasoline motor. Held, that plaintiff came within the protection of the Federal Employers' Liability Act. The Court said:

"There can be no doubt but that the amendment was intended to broaden the scope of the Act to include employees whose work was related to the functioning of interstate commerce. Concededly the relationship between the encompassed occupations and the actual transportation in interstate commerce has become more tenuous as this law has developed. It was this fact, no doubt, that caused Congress to enlarge the scope of the Act by stating that all employments in *furtherance* of interstate . . . commerce" are within the Act. The word "furtherance" is a comprehensive term. Its periphery may be vague, but admittedly it is both large and elastic. It would not be an undue stretching of it to hold that one who is engaged with others in the process of repairing the car so that it may thereafter be moved

in interstate (or by happenstance in intrastate) commerce, is engaged in an occupation "in furtherance" of interstate commerce.

"A car can not travel, even in interstate commerce, without wheels. Ordinarily a car is as usable in interstate as in intrastate commerce. The same crane which plaintiff operated moved many articles. Some were used on cars which moved in interstate commerce. No one in the employ knew where the car wheel would be used. Perhaps the success of the repair efforts would determine its future use.

"The report of the Senatorial Committee indicates that the amendment was intended to extend the application of the Federal Employers' Liability Act to employees, like plaintiff, who are engaged in work which left them and their attorneys in deepest doubt as to the law which governed their employers' liability, and their right to recover damages for injuries which they might receive."

Wright v. New York Cent. R. Co., 33 N. Y. S. 531, 263 App. Div. 461, was an appeal from a decision of the State Industrial Board awarding claimant $400 for serious facial disfigurement. Claimant was employed as a boilermaker. His work necessitated all kinds of repairs in connection with boilers. For five days of the week he worked exclusively on engines which had been withdrawn from interstate transportation. On the sixth day of each week, when the boiler inspector had his day off, claimant acted in his stead. The duties of a boiler inspector, among others, pertained to engines engaged in interstate transportation. The day claimant was injured, he was engaged in applying a patch to a leaking tank of an engine. While so engaged a can of carbon exploded with resultant burns upon claimant's face, forehead, and neck, causing the disfigurement for which the award was made. The engine when it developed the leak was hauling cars in transit interstate. After the repairs were made the engine was assigned to relief work, and several hours later it was assigned to haul from Albany to Harmon a train which contained cars in transit from Toronto to New York City. Held, that the State Industrial Board had no jurisdiction of the claim, but that claimant's rights, if any, were under the Federal Act.

When buildings, which by the nature of their use are instrumentalities of interstate commerce, become inadequate or insufficient to promptly and efficiently keep freight cars in proper repair, and it becomes necessary to make repairs, alterations, or additions to them, in order that the work performed therein may be more promptly and efficiently done, does it not necessarily follow that one engaged in this work of repair or alteration is working in furtherance of interstate commerce? It has been so held.

In Zimmermann v. Screndrett, D. C. E. D. Wis., 57 F. Supp. 799, plaintiff's husband was killed while engaged in repairing a door in a roundhouse, which was used for the housing and repairing of locomotives utilized in interstate commerce as well as intrastate commerce.

He was a member of a crew performing maintenance and repair work, such as repairing doors, windows, and water leaks, digging sewers, and making sidewalks. While repairing a door in the above mentioned roundhouse, he came in contact with a pipe containing shorted electric wiring and was instantly electrocuted. Held, that plaintiff was entitled to recover under the Federal Employers' Liability Act. After reviewing the authorities, the court said:

"In the instant action the defendants' instrumentality, Roundhouse No. 1 at the Milwaukee Shops, was operated the year round, the facilities of which were very largely devoted to interstate commerce in the housing and repairing of locomotives previously used and intended for later use in such commerce. In order to keep such instrumentality serviceable, the defendants regularly and steadily employed the deceased as a member of a repair and maintenance crew to repair doors, windows, water leaks, digging sewers, etc. When injured the deceased was engaged in repairing one of the doors of the roundhouse. The deceased's work, proceeding from day to day and more or less routine in character, was obviously an important part of the overall operation of the instrumentality and was requisite to keeping that instrumentality in serviceable, running condition. The deceased's work, therefore, was in "furtherance" of interstate commerce. It also affected such commerce "closely and substantially." What is true of his work generally is also true of the work he was performing at the time he met his death. The deceased was engaged in interstate commerce within the meaning of the amendment."

Other cases which illustrates the broadened scope given the Federal Employers' Liability Act by the 1939 Amendment to Section 51 are: Ermin v. Pennsylvania R. Co., DCED N. Y., 36 Fed. Supp. 936; Harris v. Missouri Pacific R. Co., 158 Kan. 679, 149 P. (2d) 342; Patsaw v. Kansas City Southern R. Co., D. C. La., 56 F. Supp. 897; Agostino v. Pennsylvania R. Co., D. C. N. Y., 50 Fed. Supp. 726; Scarborough v. Pennsylvania R. Co.,, 154 Pa. Super 129, 35 A. (2d) 603; Prader v. Pennsylvania R. Co., 113 App. Div. 518, 49 N. E. (2d) 387; Missouri Pacific R. Co. v. Fisher, Ark., 177 S. W. (2d) 725; Great Northern Ry. Co. v. Industrial Com. et al., 245 Wis. 375, 14 N. W. (2d) 152; Taylor v. Lumaghi Coal Co., 352 Mo. 1212, 181 S. W. (2d) 536; Ford v. Louisville & N. R. Co., Mo. Sup., 196 S. W. (2d) 163.

But, respondent says that the operation of the forge shop was not dependant upon said ventilator, and, therefore, being unnecessary, its installation was not in furtherance of interstate commerce. However, the evidence does show that the forge shop had been in operation for a period of eight or ten days prior to the date of claimant's injury, and that the pipe ventilator was being installed to remove from the shop smoke and fumes generated by the forge. It was a health measure primarily for the benefit of the men working in the shop. The test is, not whether respondent's work was indispensable to the operation

of the forge shop, but whether it was in furtherance of interstate commerce, or directly or closely and substantially affected interstate commerce. It might be that the workmen could work in a shop inadequately ventilated and at the expense of their health and comfort. But, this would, beyond doubt, impair their efficiency, and affect adversely the movement of commerce. Anything done to alleviate this condition would undoubtedly be in furtherance of interstate commerce.

Respondent further contends that since the ventilator was not completed on the day of the accident, it was not an instrument used in the furtherance of interstate commerce, and that therefore claimant was not engaged in such work at the time as to bring him under the Federal Act.

In this case we are not required to determine whether under the 1939 Amendment to the Act one engaged in erecting a new structure intended to be used in interstate commerce is actually engaged in interstate commerce. Here claimant was engaged in the alteration and improvement of an existing structure, which, by its use, had become an instrumentality in furtherance of interstate commerce. Any repair work or alteration designed to make such an instrumentality more effective is clearly not within the rule that excludes coverage by the Federal Act for injuries sustained while performing work on new structures. Agostino v. Pennsylania R. Co., D. C. N. Y., 50 Fed. Supp. 726; see Note, 153 A. L. R. 357; Thompson v. Cincinnati, N. O. & T. P. R. Co., 165 Ky. 256, 176 S. W. 1006.

Our conclusion is that claimant herein, at the time he received his injuries, was engaged in work in furtherance of interstate commerce, and work which directly or closely and substantially affected such commerce.

The judgment of the trial court is reversed. *McCullen, P. J.,* and *Hughes, J.,* concur.